# KIRWAN v. MURPHY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 161. Argued January 30, 1903.—Decided April 6, 1903.

Even if the making of a government survey, which could be made without any material injury to soil or timber, involved a trespass, it would be of so fugitive and temporary a character as to lack such elements of irreparable injury as would furnish the basis for equity interposition. Nor will a bill of peace lie where the legal remedy is adequate, and where the persons directly interested are not made parties, are not numerous, and assert separate rights.

The administration of public lands is vested in the Land Department, and its power in that regard cannot be divested by the fraudulent action of a subordinate officer outside of his authority and in violation of the statute. The courts can neither correct nor make surveys. The power to do so is in the political department of the government, and the Land Department must primarily determine what are public lands subject to sur-

vey and to disposal, and as it is possessed of this power in general, its exercise of jurisdiction cannot be questioned by the courts before it has taken final action.

A bill in equity cannot be maintained to enjoin the officers of the Land Department from surveying land which years before had been omitted from an alleged survey, the complainants having purchased lands under such alleged survey, which did not include that in question. The remedy for any infringement of complainant's rights is at law after the administrative action of the government has been concluded.

MURPHY and others filed their bill of complaint in the United States Circuit Court for the District of Minnesota against Kirwan, as United States surveyor general for that district, and Thomas H. Croswell, as deputy surveyor, to enjoin them from surveying, by direction of the Commissioner of the General Land Office, certain lands claimed by the Land Department to be unsurveyed public lands of the United States.

Complainants alleged that they owned lots 1, 2 and 3 of section 2; lots 1 and 2 of section 3; lots 1 and 8 and parts of lots 6 and 7 of section 4; and certain described parts of sections 9, 10 and 11, in township 57 north, range 17 west, fourth principal meridian, Minnesota, deriving title thereto through mesne conveyances and patents from the government; that the land was surveyed by Henry S. Howe in June, 1876, and record of the survey and field notes were approved by the surveyor general August 7, 1876, and a plat therefrom was by him duly made and submitted to the Commissioner of the General Land Office; that complaint was filed against the accuracy and good faith of the survey, which the Commissioner dismissed, and June 11, 1879, approved the survey and plat, which were duly filed and are the only survey and plat of the township ever made or adopted by the government, and according to them the government sold and disposed of all the land in the township; that the survey, field notes and plat were incorrect, and did not accurately show the location and subdivisions of the land and water of the township, for that Cedar Island Lake is smaller than delineated, and several of the complainants' fractional lots are larger, and others are smaller, than shown on the plat; that complainants purchased said lands for value as extending to the lake upon an estimate of the timber thereon without knowledge

of the inaccuracy or fraud of the survey; that the principal consideration inducing such purchase was that the land bordered on the lake and they owned other timber lands, the timber from which could be brought to market by floating through the lake and its outlet down the St. Louis River, then the only means of transport; that in 1892, five certain settlers, knowing complainants' rights and claims, petitioned for a survey of said lands, which the surveyor general recommended to the Commisioner of the General Land Office should be allowed, but the petition was disallowed, whereupon on appeal to the Secretary of the Interior such proceedings were thereafter had that in October, 1895, the Commissioner of the General Land Office directed the United States surveyor general of the district of Minnesota to make a resurvey, which order was ratified and confirmed in November, 1896; that the contract for the resurvey of said land had been let by the surveyor general to Croswell and the survey was about to commence.

The bill averred that "by a new survey of said lands your orators will be put to great and vexatious litigation in making proof of their title in actions against parties who are wholly irresponsible; that a very large amount of the timber standing as aforesaid on the land of your orators and owned by them will be destroyed in the making of such proposed survey and the remainder thereof exposed to damage by fire by reason of said resurvey and your orators will be thereby irreparably injured."

The prayer was that the "surveror general, his agents, attorneys, solicitors, and servants may be restrained by the order and injunction of this honorable court from entering into any contract for the survey of the lands herein described, or from surveying the same, or from taking any action for a survey of said lands or any part thereof, and that boundaries of said lands of your orators may be defined and set out in the decree and order of this honorable court and that all necessary direction may be given them for that purpose and to establish the boundaries of said lands, and that your orators may be protected in the use and enjoyment of such lands so owned by them as aforesaid extending to and including the shores of said Cedar Island

Lake and to the center of said lake, and that said defendant and his successors in office may be perpetually enjoined from letting said contract for the survey of said land or any part thereof, and from surveying the same or any part thereof, and that your orators may have such other and further relief as to this court may seem meet."

Argument was had on the application for a temporary injunction and the matter taken under advisement, whereupon defendants filed their joint answer to the bill.

Defendants admitted the making of a contract of survey of the unsurveyed lands in these sections lying between Howe's purported meander line and Cedar Lake; that in 1876 a contract was made with Howe for the survey of the township, and that he returned the field notes of a pretended survey from which a plat was made and approved, but defendants averred that Howe surveyed only the exterior lines of the township, and in fact made no subdivision thereof, nor surveyed the lands within it; that his field notes were false, fraudulent and fictitious, and the plat made therefrom was false and incorrect; they admitted that the survey and plat were approved by the Commissioner of the General Land Office after complaint to him of its inaccuracy, but not until after withdrawal of the charge of inaccuracy by the person making it. They admitted that an exhibit attached to the bill was a true copy of such approved plat; they denied that all of the lands were disposed of by the government, and alleged that about 1200 acres in these sections were never disposed of and were still unsurveyed, lying between Cedar Lake and the lots described, all of which unsurveyed land is the land referred to, and is by the plat made from Howe's field notes indicated as part of Cedar Island Lake; they allege that no lots conveyed to the complainants were smaller than shown on the plats; that the true relative size of the lake to that shown in the plat was that shown on an exhibit attached, and that the land between the lake and the boundary line of the fractional lots was 1200 acres of unsurveyed government land as referred to; defendants denied the good faith of complainants and alleged complainants' full participation in the contest proceedings resulting in the decision and order for the survey

of these lands, and that the Commissioner and the Secretary of the Interior had full jurisdiction to pass on the question and to make the decision and order.   The answer denied that the timber on complainants' land would be destroyed or damaged in making such survey, and denied every averment of the bill except as in the answer averred or denied.

The Circuit Court granted the preliminary injunction, and its order was affirmed by the Circuit Court of Appeals for the Eighth Circuit.   83 Fed. Rep. 275.   An appeal was taken to this court and dismissed.   170 U. S. 205.

The cause then went to final hearing, and the Circuit Court found the facts as follows :

"1. On or about April 26, 1876, a contract for the survey of all lands in township 57 north, of range 17 west, in Saint Louis County, Minnesota, was made by the government of the United States with one Henry S. Howe, as a deputy surveyor of the United States, and thereafter said Howe made and filed what purported to be field notes of a survey of said township, from which a purported official plat of said township was thereafter made and approved by the surveyor general of the United States for the District of Minnesota and by the Commissioner of the General Land Office, of which plat Exhibit A attached to the bill of complaint is a substantially correct copy

"2. There is no evidence, nor any marks upon the ground, to indicate that any actual survey of said township 57 was ever made by said Howe, as required by his said contract, and by the rules and regulations of the General Land Office, or at all, beyond the running and due marking of the exterior boundary lines of said township, where the section, quarter, and other posts and markings established by him are and always have been clear, distinct, and readily found and traced.   There is no evidence on the ground that section lines were ever run by him in or across said township, or section corner posts or quarter posts ever located or set by him, except a corner post at the northwest corner of section thirty-six (36) and a quarter post in the western line of said section thirty-six (56), and there is no evidence that witness trees were ever blazed or marked by him.

"3. Cedar Island Lake is a navigable, deep, and permanent body of water, fed principally by springs, having an area of about nine hundred (900) acres, instead of about eighteen hundred (1800) acres as described in the field notes of Howe and shown on said official plat of said township. Instead of the shores of said lake being low and swampy as stated in said field notes, the banks are generally high and sloping lands, suitable for agriculture, extending around the lake, and support a good growth of pine and other forest trees large enough for lumbering, such as will not grow in water. The condition was the same in 1876, and no material part of the land surrounding the lake is accretion. Southerly and westerly of said Cedar Island Lake are five other deep, navigable, and permanent lakes in the same township, none of which are shown by the field notes of Howe's survey or upon said government official plat of said township, and all of which have, since the making of said official plat, been sold and patented by the government as land according to said plat.

"4. There is no evidence upon the ground that any meander line of said Cedar Island Lake was ever surveyed by said Howe, or any meander posts placed by him about said lake, except one where the north line of said township encounters said lake. And the outlet of said lake is at a different place from that described in said field notes and shown upon said official plat. After the making of the said survey and plat and before its approval, complaints touching the accuracy thereof were made to the Commissioner of the General Land Office, but on the withdrawal of such complaints the said survey and plat were approved.

"5. The land lying between the actual water line of said Cedar Island Lake and the meander line of that lake, as delineated on said official plat of said township, comprises the land in controversy in this suit, and is the same land directed to be surveyed by the Commissioner of the General Land Office and referred to in the surveyor's contract, which is attached as Exhibit A to the answer in this suit, being therein described as 'the public lands situate in secs. 2, 3, 4, 9, 10, and 11, in township No. 57 N., R. 17 W., of the 4th principal meridian, lying

between the "old meander boundary of Cedar Island Lake," as given by the original field notes of Henry S. Howe, U. S. deputy surveyor, approved by the surveyor general of Minnesota, Aug. 19, 1876, and the shore line of said Cedar Island Lake.'

"6. Prior to the commencement of this suit the United States has sold, and by its patents has conveyed to the purchaser, according to said official plat made from said Howe survey, all the land in said township 57, as the same appeared upon said plat; to which plat all of said patents expressly referred; it being then and still the only government plat of said township.

"7. The complainants are the grantees and owners by mesne conveyances from the patentees of the record title to the following-described fractional lots in said township, to wit : Lots one (1), two (2), three (3), in section two (2); lots one (1) and two (2), in section three (3); lots one (1) and eight (8), and portions of lots three (3), five (5), and six (6), in section four (4); lots one (1), two (2), three (3), and four (4), in section nine (9); lots one (1), two (2), three (3), and four (4), in section ten (10); and lot three (3) in section eleven (11), being the same lands which are more particularly described in complainants' bill; and each of which fractional lots appear and are represented on said official plat as bounded by and upon said Cedar Island Lake.

"8. So far as appears none of the patentees of said lands had any notice or knowledge of any fraud or misconduct on the part of said Howe in or about the making of said survey and field notes, and all were purchasers in good faith of said lands.

"9. Complainants purchased said fractional lots of land of the patentees or their grantees for the pine timber thereon, and the convenience of landing the same in the said Cedar Island Lake, to be driven to the place of manufacture; and before such purchase, in the year 1883, caused said lands to be explored and examined by an experienced timber estimator, who in making such examination used, as is customary in such cases, a copy of said official plat of said township which did not have upon it in any statement of the acreage or amount of

land in any of the subdivisions; and who reported to the complainants his estimate of the amount of pine timber on said lands, and the general character of said land, and the riparian character thereof as bounded upon said Cedar Island Lake; but did not discover or report any fraud or error in the survey of said township, or any error or mistake in the said official plat. And the said complainants purchased, paid for and took conveyances of said lands in good faith, and without any notice or knowledge of any such fraud, error, or mistake.

"10. The other permanent lakes in said township, not shown upon such official plat, but appearing thereon as land, and since sold and patented by the government as land according to such official plat, include areas equal to the area of said Cedar Island Lake; and portions of such lakes were purchased by complainants as land with their other purchases in said township.

"11. The survey sought to be restrained in this suit was ordered by the Commissioner of the General Land Office, upon the direction of the Secretary of the Interior, in a proceeding instituted by certain settlers upon the land in controversy; of which proceedings the complainants had due notice, and in which they appeared."

And the Circuit Court decreed:

"That the complainants are the grantees and owners, by mesne conveyances from the patentees, of the title of record and, in fact, to the following-described fractional lots, situate in township fifty-seven (57) north-range seventeen (17) west, in the county of St. Louis, State of Minnesota, to wit:" [Here follows description of lots,] "being the same lands which are more particularly described in the complainants' bill of complaint herein; and that said above-described fractional lots extend to and are bounded by and upon the actual waters of Cedar Island Lake.

"It is further ordered, adjudged, and decreed that the defendants have no jurisdiction or authority to meddle with said lands or to make the survey complained of in the bill of complaint herein; and

"It is further ordered, adjudged, and decreed that the in-

junction heretofore issued in this cause be and the same.is hereby made perpetual, and that the said defendants and their successors, representatives, and assigns be and they are. hereby severally and perpetually restrained and enjoined from surveying or causing to be surveyed the lands hereinbefore described, or any part thereof." And for costs.

Appeal was then taken to the Circuit Court of Appeals and the decree affirmed. 109 Fed. Rep. 354. Thereupon the case was brought to this court.

The following drawing taken from petitioners' brief sufficiently illustrates the situation :

*Mr. Assistant Attorney General Van Devanter* for appellants. *Mr. Assistant Attorney Webster* was with him on the brief.

*Mr. Benton Hanchett* and *Mr. M. H. Stanford,* with whom *Mr. S. D. Luckett* was on the brief, for appellees.

I. The reference in the patents to the plat makes the plat as much a part of the patent as it would be had the plat been incorporated into and made, in fact, a part of the patent itself.

By the plat designating the lots as bounded by the lake showing the lake to be the boundary of the lots, the effect to be given to the patent is the same as it would be if the description of the lots in the patent had in express language said that the lots extend to and are bounded by the shore of the lake. The lake is thus made a designated natural object constituting a boundary of. the lots. It is a boundary monument of the lots. *Lincoln* v. *Wilder*, 29 Maine, 169 ; *Erskine* v. *Moulton*, 66 Maine, 276 ; *Davis* v. *Rainsford*, 17 Massachusetts, 207 ; *Whitman* v. *Boston & Maine R. R. Co.*,.3 Allen, 133, 139 ; *Boston Water Power Co.* v. *Boston*, 127 Massachusetts, 374 ; *Morgan* v. *Moore*, 3 Gray, 319, 321, 322 ; *Murdock* v. *Chapman*, 9 Gray, 156 ; *Rodgers* v. *Parker*, 9 Gray, 445 ; *Fox* v. *Union Sugar Refinery*, 109 Massachusetts, 292 ; *Parker* v. *Bennett*, 11 Allen, 388 ; *Masterson* v. *Monroe*, 105 California, 431 ; *Cragin* v. *Powell*, 128 U. S. 691.

In the patents by which these lots in question are conveyed by the United States there is no description of the lands other than by reference to the plat. Under the above authorities, the description by the plat is to have the same effect as though the language of the patent in terms stated that the lake is a boundary of the lots.

II. The patents, by reference to the plat, having described the lands as extending to and bounded by the lake, conveyed all the land within the descriptions, and the United States is estopped to deny that the lots extend to and are bounded by the lake. *Thomas* v. *Poole*, 7 Gray, 83 ; *Parker* v. *Smith*, 17 Massachusetts, 411, 415 ; *O'Linda* v. *Lothrop*, 21 Pick. 292 ; *Rodgers* v. *Parker*, 9 Gray, 445 ; *Fox* v. *Union Sugar Refinery*, 109 Massachusetts, 292 ; *Farnsworth* v. *Taylor*, 9 Gray, 162 ; *Stetson* v. *Dow*, 16 Gray, 372 ; *Lunt* v. *Holland*, 14 Massachusetts, 149.

Estoppel applies against the United States as it applies under like circumstances against a private person. As under the above authorities a private person conveying the lands by reference to such plat would be estopped to deny that the land extended to and was bounded by the lake, so is the United States estopped to deny the same facts. *Lindsey* v. *Hawes*, 2

Black, 554, 560; *Woodruff* v. *Trapnall,* 10 Howard, 190, 207; *Branson* v. *Wirth,* 17 Wall. 32, 42; *Clark* v. *United States,* 95 U. S. 539, 544; *Pengra* v. *Munz,* 29 Fed. Rep. 830, 836; *Hough* v. *Buchanan,* 27 Fed. Rep. 328, 331; *Indiana* v. *Milk,* 11 Fed. Rep. 389, 396, 397; *United States* v. *Military Road Co.,* 41 Fed. Rep. 493, 501; *United States* v. *McLaughlin,* 30 Fed. Rep. 147, 161, 162; *Commonwealth* v. *Philadelphia &c. Turnpike Co.,* 153 Pa. St. 47; *State* v. *Janesville Water Power Co.,* 92 Wisconsin, 496; *Michigan* v. *F. & P. M. R. R. Co.,* 89 Michigan, 481; *Michigan* v. *Jackson, L. & S. R. Co.,* 69 Fed. Rep. 116, 120, 121, 123; *Commonwealth* v. *Heirs of Andre,* 3 Pick. 224; *Menard's Heirs* v. *Massey,* 8 How. 293, 313, 314.

Under the above authorities, the United States, in a suit brought in its behalf, would be estopped to deny that Cedar Island Lake was the boundary of the lots conveyed by the patents.

III. The descriptions of these fractional lots contained in the patents, being lots as they appear by their numbers, and by their boundaries designated on the plat, and the lake itself being made the boundary, the boundary by the lake thus made governs the description, notwithstanding no courses, distances, nor computed contents correspond with such boundary. This is clearly decided by the following cases, even though it may be found that no survey of the lots had in fact been made. *Newsome* v. *Pryor's Lessee,* 7 Wheat. 7; *McIver's Lessee* v. *Walker,* 9 Cranch, 173, 179; *Preston's Heirs* v. *Bowmar,* 6 Wheat. 580; *Higueras* v. *United States,* 5 Wall. 827, 835, 836; *Morrow* v. *Whitney,* 95 U. S. 551; *County of St. Clair* v. *Lovingston,* 23 Wall. 46, 62, 63; *Murdock* v. *Chapman,* 9 Gray, 156; *Bishop* v. *Morgan,* 82 Illinois, 351; *Shufeldt* v. *Spaulding,* 37 Wisconsin, 662, 668; *Gove* v. *White,* 20 Wisconsin, 425, 432; *Graves* v. *Fisher,* 5 Maine, 69; *Horne* v. *Smith,* 159 U. S. 40; *Niles* v. *Cedar Point Club,* 175 U. S. 300.

Generally, these meandered lines are lines which course the banks of navigable streams or other navigable waters. Hence, it appears distinctly from the field notes and the plat that the surveyor, Rice, stopped his surveys at this "marsh" as he called it. These surveys were approved and a plat prepared, which

was based upon the surveys and field notes, and showed the limits of the tracts which were for sale. The patents referring in terms to the survey and plat, clearly disclose that the government was not intending to and did not convey any land which was a part of the marsh.

By the plat in the case which is now before the court, the meander line is fixed upon the shore of the lake, and the lake is delineated and named on the plat.

The intention plainly expressed by the patent and plat is that the meander line and shore of the lake coincide, and that the lake itself is the boundary of the land conveyed.

In this manner the lake is made the boundary of the land within the decisions in *Horne* v. *Smith*, and *Niles* v. *Cedar Point Club*, because the plat shows that the lake is intended as the boundary.

IV. Defendants contend that a patent of unsurveyed lands conveys no title, and that, therefore, no title passed from the United States to the lands in controversy, because it was not, in fact, surveyed by Deputy Surveyor Henry S. Howe, and cite to sustain this position the expression of the court in the case of *Horne* v. *Smith*, 159 U. S. 40.

That case does not hold, as claimed by defendants' counsel, that land which is not surveyed cannot pass by patent. See also *Mitchell* v. *Smale*, 140 U. S. 406; *Railroad Co.* v. *Schurmeir*, 7 Wall. 272.

V. The patents having included the lands in controversy within the descriptions of the lands conveyed, the validity of the patents cannot be questioned in this suit.

1st. If there was mistake or fraud in the issue of the patents, it can be corrected only by a suit brought by the United States, which shall set forth the facts which constitute the basis or ground for such correction.

The survey of the public lands is vested in the Land Department, and it is within the jurisdiction of that department to determine when the lands have been properly surveyed, so that a patent may be issued for them.

The action of the Land Department upon this subject is judicial, and is " unassailable, except by a direct proceeding for its

correction or annulment." *Smelting Co.* v. *Kent,* 104 U. S. 636, 640 ; *United States* v. *Minor,* 114 U. S. 233, 241, 243 ; *Moffat* v. *United States,* 112 U. S. 24, 30 ; *United States* v. *Schurz,* 102 U. S. 378, 396 ; *United States* v. *Stone,* 2 Wall. 525, 535 ; *Erhardt* v. *Hogaboom,* 115 U. S. 67 ; *Johnson* v. *Towsley,* 13 Wall. 72, 83 ; *Noble* v. *Union River Logging R. R.,* 147 U. S. 165, 175 ; *Bishop of Nesqually* v. *Gibbon,* 158 U. S. 155, 166, 167.

To assail these patents on the ground of fraud, or to correct them in respect to the lands in controversy, the suit would have to be instituted by the United States, since the controversy would be between it and the complainants, no other parties having obtained any claim to the lands from the United States. *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273.

The complainants cannot bring suit against the United States in this court, or elsewhere, to establish the complainants' title to the lands.

They must rest upon the patents for their title until the United States sees fit to attack the patents. *United States* v. *Schurz,* 102 U. S. 378, 404.

The United States has not appeared in this suit, and the court had no jurisdiction to bring it into the case, and no decree which may be made will be of any effect against the United States.

The attack upon the validity of the patents by the defence in this suit is a collateral attack, and is not available to the defence.

2d. In the suit instituted by the United States, to avoid or correct the patent on the ground of the alleged false character of the field notes and plat, the complainants would have the right to set up as their defence an estoppel against the United States.

The authorities above cited establish that the defence of estoppel would be available in such suit to the complainants.

3d. The complainants would also be in position to defend against the United States in such suit upon the ground of their being *bona fide* purchasers of the lands, and in such suit the United States would be required by its pleading to state

clearly the facts upon which the charge of fraud or mistake
was based, and the burden would be upon it to sustain the
charge by clear and convincing proofs, even though to do so
would require the proof of the negative.    A preponderance of
the evidence merely would not sustain it.    *Maxwell Land Grant
Case,* 121 U. S. 325, 379, 381 ; *Colorado Coal Co.* v. *United
States,* 123 U. S. 307, 313, 314 ; *United States* v. *Burlington &c.
R. R. Co.,* 98 U. S. 334, 342 ; *United States* v. *California &c.
Land Co.,* 148 U. S. 31, 40 ; *United States* v. *Winona &c. R. R.
Co.,* 165 U. S. 463, 478 ; 67 Fed. Rep. 948, 960.

VI. The court has jurisdiction to enjoin the acts of the de-
fendants in making a survey of the lands.

1st. The survey is made under such a contract that the lands
in controversy may be treated as government lands, open for
homestead or other claims, or for purchase, under the laws gov-
erning the disposition of the government lands.

These proceedings of survey, field notes, and plat, will consti-
tute a cloud upon the complainants' title to the land.

Under the general equity powers of the Federal courts, they
have jurisdiction to quiet title to lands in favor of the party
in possession, having the title, against a party not in posses-
sion, who sets up a claim to the land which constitutes a cloud
upon the possessors' title.    *Peirsoll* v. *Elliott,* 6 Pet. 95 ; *Mc-
Conihay* v. *Wright,* 121 U. S. 201 ; *Frost* v. *Spitley,* 121 U. S.
552 ; *United States* v. *Wilson,* 118 U. S. 86.

The reason why the general jurisdiction of courts of equity
is limited to cases in which the complainants are in possession
of the lands is, that, if not in possession they have an adequate
remedy at law by ejectment ; the further reason applicable to
the Federal courts is that the right to trial by jury is preserved
in those courts in all cases in which the conditions are such that
the matter in controversy may be tried in a suit at law by a
jury.

In those States where, by statute, a right is given to a party
to maintain a suit in equity to quiet title to land owned by him,
which is vacant or unoccupied, that right may be enforced in
the Federal courts.    The right is held to be the creation, by
statute, of an equitable right, which right, by reason of the de-

fendant not being in possession, cannot be tried in an action at law; there is therefore no infringement in such case of the right to trial by jury. *Clark* v. *Smith,* 13 Pet. 195; *Holland* v. *Challen,* 110 U. S. 15, 20–25; *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 405, 410, 411; *United States* v. *Wilson,* 118 U. S. 86; *Rich* v. *Braxton,* 158 U. S. 375, 405; *Dick* v. *Foraker,* 155 U. S. 404, 414, 415; *Greeley* v. *Lowe,* 155 U. S. 58, 75; *Cowley* v. *Northern Pac. R. R. Co.,* 159 U. S. 569, 582, 583; *Smuth* v. *Ames,* 169 U. S. 466, 517.

The statutes of the State of Minnesota provide as follows:

"SEC. 2. *Action to Determine Adverse Claims.* An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein, or lien upon the same, adverse to him, for the purpose of determining such adverse claim, estate, lien, or interest; and any person having or claiming title to vacant or unoccupied real estate may bring an action against any person claiming an estate or interest therein adverse to him, for the purpose of determining such adverse claim, and of the rights of the parties, respectively." Stat. Minnesota, 1878, c. 75, § 2, p. 814. This statute of Minnesota is substantially the same as the statute of Indiana, referred to in the case of *Reynolds* v. *Crawfordsville Bank.* Under this statute, the Circuit Court in which this suit was brought, sitting in Minnesota has jurisdiction to remove the cloud from the complainants' title to the lands in controversy, which lands, in respect to the parties to this suit, are vacant and unoccupied.

2d. Where courts in equity have jurisdiction to remove a cloud from title to lands, they have jurisdiction to prevent, by injunction, the proceedings for the creation of a cloud, and suit in any such case is in the character of a bill *quia timet.* 1 High on Injunctions, sec. 372 (2d ed.); 3 Pomeroy Eq. J. secs. 1345 and 1398, note; 1 Story Eq. J. sec. 700; *Petit* v. *Shephard,* 5 Paige, 493, 501, 502; *Oakley* v. *The Trustees of Williamsburgh,* 6 Paige, 262; *O'Hare* v. *Downing,* 130 Massachusetts, 16; *Peirsoll* v. *Elliott,* 6 Pet. 95; *Sharon* v. *Tucker,* 144 U. S. 533, 547; *Briggs* v. *French,* 1 Sumn. 504; *Union Pac. R. Co.* v. *Cheyenne,* 113 U. S. 516, 526, 527.

The right to maintain suit and prevent the creation of a cloud upon the title in case of vacant or unoccupied lands is clearly within the intent and purpose of the statute of Minnesota, and would be enforced in the courts of that State.

But the jurisdiction of the courts, either State or Federal, does not depend in such case upon the state statute. Remedy to prevent the wrong or injury threatened or intended by the proceedings to create a cloud upon the title exists in equity, because the only effective remedy is by injunction to stay the proceedings.

The right to trial by jury is not invaded, since there is no opportunity at law to try the controversy.

3d. In order that the complainants be remitted to their remedy at law, it must appear that such remedy is plain and adequate in the sense that it is "as practical and efficient to the ends of justice, and its prompt administration as the remedy in equity," and the circumstances of the case must determine whether there is such remedy at law. *Boyce* v. *Grundy*, 3 Pet. 210, 215; *Watson* v. *Sutherland*, 5 Wall. 74, 78; *Payne* v. *Hook*, 7 Wall. 425, 430; *United States* v. *Union Pac. R. R. Co.*, 160 U. S. 1, 51; *Oelrichs* v. *Spain*, 15 Wall. 211, 228; *McConihay* v. *Wright*, 121 U. S. 201, 205, 206; *Holland* v. *Challen*, 110 U. S. 15, 24.

If the proceedings sought to be enjoined in this case are allowed to be completed the inevitable result will be various claims made for the lands as government lands. The very object of the survey is to open lands to such claimants, and in order that the complainants defend and maintain their title a multiplicity of suits will be the result.

No action at law is adequate to the complainants' protection.

Under these conditions the court will enjoin the acts of the defendants to prevent a multiplicity of suits. Pomeroy, Eq. J. secs. 243, 245, 267, 268; *Livingston* v. *Livingston*, 6 Johns. Chy. 497; *DeForest* v. *Thompson*, 40 Fed. Rep. 375 (opinion by Judge Jackson, Mr. Justice Harlan concurring); *Osborne* v. *Wisconsin Cent. R. Co.*, 43 Fed. Rep. 824 (opinion by Mr. Justice Harlan); *Crews* v. *Burcham*, 1 Black, 352, 358; *Louisville &c. R. Co.* v. *Ohio &c. Co.*, 57 Fed. Rep. 42; *New York &c.*

*R. Co.* v. *Schuyler*, 17 N. Y. 592; *Supervisors* v. *Deyoe*, 77 N. Y. 219.

4th. To make the intended survey of the lands it would be necessary to cut down a considerable quantity of the pine timber standing upon the lands, and by the cutting of such timber, the remainder of the valuable pine timber would be exposed to destruction by fire. An irreparable injury is threatened.

It is an undisputed fact that the chief value of the lands in controversy consists in the pine timber standing upon them.

It is a fact of common knowledge that the felling of timber in the pine forests in the northern States is a source of special and great danger to the *remaining* pine timber standing upon the lands. Fires are easily kindled, and there is constant likelihood of their being kindled, in the dry tops and refuse of the fallen trees; having gained force from the quantity of refuse the fires spread rapidly and for long distances. The standing timber is not destroyed by being burned up, but the heat about the roots of the trees kills the trees and destroys their value.

The cutting of the timber by the defendants will not be confined to one place, but will be along the different lines running through the forests upon which the survey is made. In this manner an exposure to the danger of fire will be made to large portions of the lands.

The court has jurisdiction, by injunction, to prevent the cutting of timber and the threatened danger of its destruction. *Wilson* v. *City of Mineral Point*, 39 Wisconsin, 160; *Butman* v. *James*, 34 Minnesota, 547; *Smith* v. *Roe*, 59 Vermont, 232; *West Point Iron Co.* v. *Reymert*, 45 N. Y. 703; *Camp* v. *Dixon, Mitchell & Co.*, 112 Georgia, 872; *Erhardt* v. *Boaro*, 113 U. S. 537; *North Pac. R. R. Co.* v. *Hussy*, 61 Fed. Rep. 231; *Oolagah Coal Co.* v. *McCaleb*, 68 Fed. Rep. 86; *Buskirk* v. *King*, 72 Fed. Rep. 22; *Dimick* v. *Shaw*, 94 Fed. Rep. 266.

5th. The fact that the defendants are acting under the direction of the Land Department does not deprive the court of jurisdiction to restrain acts done by them which are injurious to the complainants, and which are unlawful acts.

The title of the United States to the lands in controversy having been conveyed by the patents under which the complain-

ants obtained that title, the Land Department has no authority, either upon the ground of fraud, or mistake in the survey of the lands, to interfere with the complainants' title, or ownership or possession of the lands.

The defendants have no more right to enter upon the lands to resurvey them than they have to enter upon and resurvey any lands owned by private parties.

Before any entry can be made upon the lands by them, under a claim that they are government lands; the patents must be set aside, or declared void by the court in a suit instituted for that purpose on the part of the United States.

This position is clearly maintained by the decisions of this court. *Moore* v. *Robbins,* 96 U. S. 530; *Cragin* v. *Powell,* 128 U. S. 691, 699, 700; *United States* v. *Schurz,* 102 U. S. 378, 401, 402; *Steel* v. *Smelting Co.,* 106 U. S. 447; *Widdicombe* v. *Childers,* 124 U. S. 400; *Hardin* v. *Jordan,* 140 U. S. 371, 401; *Noble* v. *Union River Logging Railroad,* 147 U. S. 165, 175; *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589; *McCormick Machine Co.* v. *Aultman,* 169 U. S. 606; *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273, 282; *United States* v. *Winona & St. Peters R. Co.,* 67 Fed. Rep. 948, 959 (Court of Appeals).

The defendants, in attempting to survey the lands, are acting without right and without lawful authority from any source.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The bill prayed for injunction and the establishment of the boundaries of complainants' lands. The decree granted a perpetual injunction, and, describing the fractional lots, adjudged that they " extend to and are bounded by and upon the actual waters of Cedar Island Lake." The deflection of the lines required by the decree is indicated on the diagram.

Sections 2395, 2396 and 2397 of the Revised Statutes specify the manner of making surveys of public lands, and prescribe the rules by which the form and boundaries of the tracts are determined. In this case no survey was in fact made, no meander line was in fact run, and no body of water in fact

existed near the false meander line indicated. The line purporting to delimit the lake was from one mile to a quarter of a mile from the lake, and ran over high agricultural land, covered with ancient trees, which could not have grown in water. The theory of the decree is that the government is estopped by the pretended survey and plat to deny that these lots were bounded by the lake.

The Land Department must necessarily consider and determine what are public lands, what lands have been surveyed, what are to be surveyed, what have been disposed of, what remain to be disposed of, and what are reserved. The department has held that the land lying between the alleged meander line and the lake, some 1200 acres, is government land, and has ordered it to be surveyed. *In re Burns,* 20 L. Dec. 28, 295; 23 L. Dec. 430. The execution of that order was restrained by the preliminary injunction herein, and that has been made perpetual by the decree.

We are confronted on the threshold with two objections to the maintenance of this bill, namely, the want of jurisdiction in equity, and the want of jurisdiction thus to interfere with executive administration.

Equity jurisdiction was invoked on the ground of lack of adequate remedy at law in that irreparable injury in the destruction of timber and exposure to fire by the survey, and multiplicity of suits were threatened.

In our opinion complainants failed to make out a case of liability to irreparable injury. The township was resurveyed by a county surveyor in 1893; defendant Croswell has made surveys in the township, locating the actual meanders of the lake; and he testified that this survey could be made by him "without any material injury to the soil or timber;" and that he would not "have to cut very much valuable timber." If complainants as owners of the 859.38 acres contained in their fractional lots became through that ownership owners of the 1202 acres lying between those lots and the lake, the proposed survey would be but a fugitive and temporary trespass, lacking the elements of irreparable mischief, and of such long continuance as to become a nuisance.

And bills of peace will not lie where the legal remedy is otherwise adequate, and where the persons directly interested are not made parties, are not numerous, and assert separate and independent rights. *Hale* v. *Allinson,* 188 U. S. 56; *Cruickshank* v. *Bidwell,* 176 U. S. 73.

But, in the next place, was the Circuit Court justified in thus arresting the action of the Land Department in proceeding with a survey under the circumstances? In other words, can the Land Department be stayed in the discharge of a duty, not ministerial, but involving the exercise of judgment and discretion, on the ground that its jurisdiction has been lost by estoppel? We do not think so, and hold that complainants' contention that they are entitled to bound upon the lake involves a legal right, which cannot be properly passed on until after the department has acted.

Having participated in the proceedings before the department, complainants, after survey was ordered, obtained this injunction against further administrative action, on the ground of absolute want of power, and not of error in its exercise.

The administration of the public lands is vested in the Land Department, and its power in that regard cannot be divested by the fraudulent action of a subordinate officer, outside of his authority, and in violation of the statute. *Whiteside* v. *United States,* 93 U. S. 247; *Moffat* v. *United States,* 112 U. S. 24; *Hume.* v. *United States,* 132 U. S. 406, 414. The courts can neither correct nor make surveys. The power to do so is reposed in the political department of the government, and the Land Department, charged with the duty of surveying the public domain, must primarily determine what are public lands subject to survey and disposal under the public land laws. Possessed of the power, in general, its exercise of jurisdiction cannot be questioned by the courts before it has taken final action. *Brown* v. *Hitchcock,* 173 U. S. 473.

In *Litchfield* v. *The Register and Receiver,* 9 Wall. 575, Litchfield sought an injunction to restrain the register and receiver of the United States land office at Fort Dodge, Iowa, from entertaining and acting upon applications made to them to prove preëmptions to certain lands which lay within the

land district for which they were respectively register and receiver. The bill averred that complainant was the legal owner of the lands; that they were not public lands, and were in no manner subject to sale or preëmption by the government or its officers. The bill was dismissed for want of jurisdiction in equity, and this court affirmed the decree. Mr. Justice Miller said: "The principle has been so repeatedly decided in this court, that the judiciary cannot interfere either by mandamus or injunction with executive officers such as the respondents here, in the discharge of their official duties, unless those duties are of a character purely ministerial, and involving no exercise of judgment or discretion, that it would seem to be useless to repeat it here." *Gaines* v. *Thompson*, 7 Wall. 347; *The Secretary* v. *McGarrahan*, 9 Wall. 298.

It was held that the fact that complainant asserted himself to be the owner of the tract of land, which the officers were treating as public lands, did not take the case out of that rule, where it was the duty of these officers to determine, upon all the facts before them, whether the land was open to preëmption or sale; and further, that if the court could entertain jurisdiction, the persons asserting the right of preëmption would be necessary parties to the suit.

Mr. Justice Miller further said: " After the land officers shall have disposed of the question, if any legal right of plaintiff has been invaded, he may seek redress in the courts. He insists that he now has the legal title. If the Land Department finally decides in his favor, he is not injured. If they give patents to the applicants for preëmption, the courts can then in the appropriate proceeding determine who has the better title or right."

And: " It appears on its face, that the register and receiver have no real interest in the matter, but that persons not named are asserting before them the legal right to preëmpt these lands. These persons are the real parties whose interests are to be affected, and whose claim of right is adverse to plaintiff. If the court should hear the case, and enjoin perpetually the register and receiver from entertaining their applications, they have no further remedy. That is the initial point of establish-

ing their right, and in this mode a valuable and recognized right may be wholly defeated and destroyed, without the possibility of a hearing on the part of the party interested. This is not a case in which the land officers represent these claimants. They have no such duty to perform."

The case has been frequently cited, and in, among others, *Carrick* v. *Lamar*, 116 U. S. 423, an application to the Supreme Court of the District of Columbia for a mandamus to the Secretary of the Interior to order the survey of an island in the Mississippi River, opposite the city of St. Louis, by an alleged settler thereon, who averred that he had applied to the department for a survey of the island, so that it might be brought into the market, and that on the hearing of the application the city contended that the island had been surveyed and set apart to it, under certain acts of Congress, which he denied, because, as he insisted, the island surveyed was then located above this island. The court refused to grant the writ, and its judgment was affirmed, this court holding that the question how far the title of the city to the island was affected by its being carried down river by the action of the current, required consideration and judgment on the part of the Secretary.

*Noble* v. *Union River Logging Company*, 147 U. S. 165, is not to the contrary, for that was a case where the executive department had confessedly finally acted, and then attempted to resume jurisdiction, and an injunction was sustained. But the government raised no point as to the form of the remedy; deprivation of a vested legal right of property, acquired before any suggestion that it could be taken away, was threatened; and it appeared that the only remedy was through equity interposition. *Cruickshank* v. *Bidwell*, 176 U. S. 73, 80. In this case, whether the lands lying between the alleged meander line and the lake were public lands, or not, was for the Land Department to determine in the first instance, and if error was committed, this is not the way to correct it.

In our judgment the Circuit Court should not have taken jurisdiction, and therefore the

*Decree of the Circuit Court of Appeals is reversed; the decree of the Circuit Court is also reversed, and the cause remanded to that court with a direction to dismiss the bill.*