# DARLINGTON *v.* LANE.

BOUNDARIES; SECRETARY OF THE INTERIOR; RESURVEY OF PATENTED LANDS; PARTIES; INJUNCTION.

1. The controlling principle in the location of boundaries is that what is most material and certain in a description must prevail over that which is less certain; and where the locations of monuments and objects called for in the description are involved in doubt and obscurity, and cannot be ascertained with any reasonable degree of certainty, courses and distances, although **not safe** guides, must govern.

2. When a patent passes from the government, the legal title to the land involved passes with it, and all supervision and control over the land patented ceases in officials of the government.

3. It is beyond the power and jurisdiction of the Secretary of the Interior to revoke an order of his predecessor in office, re-establishing and monumenting the boundary of a Mexican grant confirmed by a special tribunal created by Congress in accordance with the description in the patent issued upon such confirmation, and arbitrarily substituting a survey considered and condemned by his predecessor, thereby greatly reducing the area of the patented grant of which the holder of the patent and his successors have been in undisturbed possession for more than forty years.

4. The United States is not a party in interest to a suit to enjoin the Secretary of the Interior from interfering with the boundaries, by resurvey of a Mexican land grant which had been patented to the predecessor in title of the plaintiff, when such action is beyond the power and jurisdiction of the Secretary.

5. If an officer of the government is without lawful power or jurisdiction to do the thing complained of, he may be enjoined with the same propriety as by mandamus he can be compelled to perform a duty imposed upon him by law.

No. 3014.　Submitted April 3, 1917.　Decided June 1, 1917.

HEARING on an appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to enjoin the Secretary of the Interior from interfering with the boundaries, by resurvey, of a Mexican land grant which had been patented to a predecessor in title of the plaintiff.

*Reversed.*

The COURT in the opinion stated the facts as follows:

Appellants, Joseph J. Darlington and John H. Clapp, trustees, estate of John M. Clapp, deceased, filed a bill in equity in the supreme court of the District of Columbia to restrain defendant, Franklin K. Lane, Secretary of the Interior of the United States, from interfering with the boundaries, by resurvey, of a Mexican land grant which had been patented to one White, through whom the plaintiffs claim by mesne conveyances.

It appears that the claim of White to the land in question was confirmed by the commission appointed by authority of an act of Congress (9 Stat. at L. 631, chap. 41) to adjust Mexican land claims in California. The order of confirmation is as follows: "In this case, on hearing the proofs and allegations, it is adjudged by the commission that the claim of the petitioner is valid, and it is therefore decreed that his application for a confirmation be allowed, with the following boundaries; to wit, On north and east by the foot of the mountains, on the south by the Agua Caliente, and on the west by the cotton woods, which are on the other side of the creek, reference being had to the map accompanying the expediente." A survey of the lands was made by one Hancock in 1868, which was finally approved by the Secretary of the Interior, and a patent issued thereon on June 22, 1872. In 1885 a bill was filed by the United States to set aside the patent on the ground that the approval of the Hancock survey had been procured by fraud and misrepresentation. The case finally reached the Supreme Court of the United States (*United States* v. *Hancock,* 133 U. S. 193, 33 L. ed. 601, 10 Sup. Ct. Rep. 264), but the court refused to sustain the allegations of fraud, and ordered the bill dismissed.

The grant was very irregular in shape, there being in the Hancock survey forty-nine calls or stations. In 1885 a survey of the surrounding government land was undertaken, and accordingly a resurvey of the patented grant was made by one Perrin, which he retraced in 1896. Perrin reported the marks established by Hancock in place, except the marks between stations 20 and 25. The important discrepancy was between stations 20 and 21. Hancock's line from station 20 to station 21 was in distance 30 chains, station 21 being designated by a sycamore tree. Perrin in 1885 found a burnt sycamore tree at 30.15 chains. In 1896 he reported that he found no mark, but at 20 chains found a blazed sycamore tree. He found, however, that by following the courses and distance of Hancock from the sycamore tree so found, he could not reach station 25, but was forced to make an arbitrary closing of the lines at that point. Protest was made by the owners against this survey,

since, by establishing station 21 at 20 chains according to
Perrin's survey, instead of at 30 chains according to Hancock's
survey and as set forth by courses and distances in the patent,
it excluded about 300 acres from the grant.

The Commissioner of the General Land Office vacated his
approval of the Perrin survey, and one Owen, a special ex-
aminer, was instructed by the Department to examine into the
survey between stations 20 and 25. In 1902 Owen reported,
in effect, that from marks or topography of the country he
found a condition difficult to unravel. He said: "The question
of determining the foot of the mountain is an intensely diffi-
cult one, and is purely a matter of judgment, and construction
of the definition of that phrase." Owen, however, reported that
at 30 chains from station 20 in the direction indicated in the
Hancock survey he found a burnt sycamore stump. On this
report, the Secretary, under date of October 30, 1902, ren-
dered a decision reviewing the entire history of the case, and
directed the Commissioner of the General Land Office to cause
a survey of the grant to be made between stations 20 and 25,
instructing him that "if any natural or artificial object indicat-
ing or marking Hancock's line of survey can be found, they must
necessarily control, and all parties in interest should be afforded
an opportunity to establish such monuments if they can be
found; but if they cannot be identified as Hancock's original
corners or stations, by some ascertained monument or object,
the line of survey must be established by the course and dis-
tance given in the patent, but closing upon station 25, irrespec-
tive of course and distance."

In accordance with these instructions one Sickler, a deputy
surveyor, made a survey which established and marked the line
according to the calls of the Hancock survey and as called for
by courses and distances in the patent, requiring, however, an
arbitrary closing at station 25. This survey was approved by
the Secretary February 28, 1907. With this final establish-
ment of the line in conformity with the terms of the patent, the
adjoining public lands were surveyed and platted, which sur-

veys were approved by the Secretary, and the lands disposed of in accordance therewith.

This disposition of the dispute seemed to have settled the whole matter, until the Secretary, on September 5, 1913, assumed jurisdiction of the matter and directed that the order approving the Sickler survey be vacated and that the line be re-established and marked according to the Perrin survey as returned in 1896 and rejected in 1902, and that "the settlers in the territory involved be permitted to amend their entries to include the area taken from them by the erroneous approval of the Sickler survey." Plaintiffs petitioned the Secretary to revoke this order, which was denied on December 16, 1914; hence this action to restrain him from carrying the order into effect.

Defendant moved to dismiss the bill, admitting that the title of plaintiffs rests upon the patent of 1872 describing the land demarcated by the Hancock survey; but averring that all subsequent surveys have been for the purpose merely of ascertaining and locating on the ground the lines of the Hancock survey; that the duty of ascertaining and determining this matter devolves by law upon the Secretary of the Interior, and is, therefore, within his discretion, and not subject to control in this action, and that the object is to establish the Hancock survey, and not alter the lines as actually patented.

On hearing the court below sustained the motion and dismissed the bill. From the decree this appeal was taken.

*Mr. Alexander Britton, Mr. Evans Browne,* and *Mr. F. W. Clements,* for the appellants, in their brief cited:

Act of March 3, 1891, 26 Stat. at L. 1095, U. S. Rev. Stat. Section 453; *French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47; *Howe* v. *Smith,* 159 U. S. 40; *Knight* v. *Land Asso.* 142 U. S. 161, 177; *Knight* v. *Lane,* 228 U. S. 6, 13; *Kirwin* v. *Murphy,* 189 U. S. 35; *Noble* v. *Union River Logging Co.* 147 U. S. 165; *Niles* v. *Cedar Point Club,* 175 U. S. 300; *New Orleans* v. *Paine,* 147 U. S. 261, 266; *Stoneroad* v. *Stone-*

*road,* 158 U. S. 240, 250; *United States* v. *Hancock,* 133 U. S.
193; *Williams* v. *United States,* 138 U. S. 514, 524; *Whitaker*
v. *McBride,* 197 U. S. 510, 515, 516; Dissenting Opinion Jus-
tice Van Orsdel in case of *Santa Fe P. R. Co.*

*Mr. Charles D. Mahaffie* and *Mr. C. Edward Wright,* for the
appellee:

1. What the grantees obtained, they got by virtue of their
patent,—not by the survey. *Russell* v. *Maxwell Land Grant
Co.* 158 U. S. 253, 259. And nowhere in the bill is it alleged
that the amount of their patented grant will be lessened or that
the appellants will lose a square foot of what was granted to them
and what was surveyed to them by Hancock.

Neither the Sickler survey nor the Perrin retracement con-
tains or imports words of grant or anything thus to operate.
Nor does it appear anywhere in the record, as appellants imply
in their brief, that the government has issued any patents to
anyone based on the Sickler or the Perrin surveys. If it had,
and if thereby appellants are aggrieved, they have their remedy.
*Whittaker* v. *McBride,* 197 U. S. 510.

The grant embraces nothing except what was conveyed to the
grantees, and certain monuments marked the outboundaries.
Where are the monuments? That is what the Department is
endeavoring to ascertain,—to determine in the first instance.
Suppose it makes a mistake and after-developments show the
location of the monuments other than where they are now as-
sumed to be. That would prove error, but the way to correct it
would be in another proceeding in another court where the land
is situated, between the contending parties. Cases bearing
upon the general scope of the authority of the Department in the
matter of surveys are: *United States* v. *Morrison,* 240 U. S. 192;
*Cragin* v. *Powell,* 128 U. S. 691; *Knight* v. *Land Asso.* 142 U.
S. 161; *Michigan, L. Etc. Co.* v. *Rust,* 168 U. S. 589; *N. O.*
v. *Paine,* 147 U. S. 261; *Brown* v. *Hitchcock,* 173 U. S. 473;
*Gardner* v. *Bonesteele,* 158 U. S. 253; *Stoneroad* v. *Stoneroad,*
188 U. S. 240.

The difference between what the case really is, and what appellants would like to have the court think it is, is suggested by *Smith* v. *Reynolds,* 9 App. D. C. 261. That presents the sort of a situation in which we may not act and in which a court will enjoin. And the reading of the case will show how utterly unlike it is to this one.

2. The Secretary's action is not reviewable by this court. *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683; *United States ex rel. G. R. T. Co.* v. *Fisher,* 37 App. D. C. 406; *United States ex rel. McKenzie* v. *Fisher,* 39 App. D. C. 9; *United States ex rel. Southwick* v. *Fisher,* 39 App. D. C. 545; *United States ex rel. Knight* v. *Lane,* 228 U. S. 6.

3. This is substantially a suit against the United States.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The Secretary, in ordering the Sickler survey to re-establish the monument the lines of the Hancock survey according to the courses and distances called for in the patent, adopted the only legal course open to adjust the confused situation. The rule of law applicable in cases of disputed boundaries is concisely stated in the decision of the Secretary directing the Sickler survey, as follows: "Those rules and the order in which they are usually considered are, first, natural boundaries; second, artificial marks; third, adjacent boundaries; and fourth, course and distance. These rules, however, are not inflexible, as where the location of monuments and objects called for are involved in doubt and obscurity and cannot be ascertained with any reasonable degree of certainty, and where no mistake can reasonably be supposed in course and distance. The controlling principle in the location of boundaries being, that what is most material and certain in a description must prevail over that which is less certain. Tyler, Boundaries, 30; *Newson* v. *Pryor,* 7 Wheat. 7, 5 L. ed. 382. But where natural or artificial objects are wanting, course and distance must govern in the absence of a more certain call. 'If a grant be made which describes the land granted by course and distance only, or by natural objects not

distinguishable from others of the same kind, course and distance, though not safe guides, are the only guides given us and must be used.' *Chinoweth* v. *Haskell,* 3 Pet. 96, 7 L. ed. 616."

But the order before us is not to make further endeavor to establish the correct Hancock line, but to arbitrarily set aside the order confirming the Sickler survey and to substitute the Perrin line. Of the Perrin survey, the Secretary, in his decision, elicited by the Owen report, said: "It does not appear from the returns of the Perrin survey of 1896, or from any of the reports of the examination thereof, that 'M 21' of Hancock's survey has been identified sufficiently to warrant the termination of the line at 20 chains. The mere fact that Perrin found a blazed sycamore there having no distinguishing mark from other trees of the same kind furnishes no proof that it is the original tree designated by Hancock as 'M 21,' especially when found by such utter disregard of distance and to a certain extent out of course. The rule that monuments will not invariably control where they are involved in doubt and obscurity, and where no mistake can reasonably be supposed in course and distance, applies with great force in this case, where the supposed monument contains no evidence of the identity of the original monument, and where it cannot be reasonably supposed that such excessive error in distance could have occurred. In his survey of 1885 Perrin at 30.15 chains found a burned sycamore stump which he reported he was unable to determine whether it was station 21, as there were several burned sycamore stumps in the vicinity. He, however, accepted it as 'M 21,' and it certainly gratified the call better than the sycamore found at 20 chains, being corroborated by course and distance. In his survey of 1896 he reports that at 30 chains he found no trace of a sycamore tree or evidence of there having been a tree at that point, and therefore determined that the sycamore at 20 chains is the corner which he marked 'M 21.' Examiner Owen, however, found the burned sycamore stump at 30 chains, which is evidently the stump found and reported by Perrin in 1885."

Of the probable correctness of the Hancock survey, the court, in *United States* v. *Hancock,* 133 U. S. 193, 33 L. ed. 601, 10

Sup. Ct. Rep. 264, said: "Some question is made as to the correctness of the survey, and that turns as a question of fact upon what is meant by the expression 'Agua Caliente' in the various descriptions. If it means a stream known as Agua Caliente, then the government has no cause to challenge the survey, for it includes less than was really confirmed; but if it means a district of country known by that name in the northwestern portion of the San Bernardino Rancho, a neighboring tract, then the survey was excessive. If it were necessary for us to determine this question, we think the evidence in the case indicates that the stream, and not the district, was intended; but it is not the province of this court to correct a mere matter of survey like that. If made in good faith and unchallenged as this has been for over fifteen years, whatever doubts may exist as to its correctness must be resolved in favor of the title as patented."

We have, perhaps, dwelt at undue length on the survey and the legal authority of the Secretary to settle it according to the courses and distances called for in the patent. If that were the only question before us, and it were still an open question in the Department, it is elementary that we would be without jurisdiction to control the discretion of defendant and order which of the several surveys should be adopted. "The courts can neither correct nor make surveys. The power to do so is reposed in the political department of the government, and the Land Department, charged with the duty of surveying the public domain, must primarily determine what are public lands subject to survey and disposal under the Public Land Laws. Possessed of the power, in general, its exercise of jurisdiction cannot be questioned by the courts before it has taken final action." *Kerwan* v. *Murphy,* 189 U. S. 35, 54, 47 L. ed. 698, 705, 23 Sup. Ct. Rep. 599.

But the crucial question here presented goes to the jurisdiction of defendant Secretary to reopen this case. The order for the remonumenting of the Hancock survey extended an invitation to all persons in interest to be heard, including those who had settled upon or initiated claims to surrounding lands. By this action the boundaries of the patented claim became fixed as the

established line of demarcation between it and the surrounding public domain. With the approval of the Sickler survey, made in accordance therewith, we think the jurisdiction of the Secretary ended. The contention now that the carrying into effect of the present order would not affect the title of plaintiffs is fallacious, for two reasons: (1) Because it would cast a cloud upon their title, which would, at least, require a proceeding in court to remove, and (2), if acquiesced in, it would reduce the area of the patented grant by 300 acres.

Much reliance is placed by counsel for the government upon the case of *Kerwan* v. *Murphy, supra.* There a claim had been patented, based upon a survey which described the meander line of a lake as one of the boundaries. It was afterwards discovered that, between the meander line shown by the patent and the actual shore of the lake, there were about 1,200 acres of unsurveyed land. The government undertook to survey this land as government land, and injunction was sought by the grantee to restrain the survey, on the ground that his claim extended to the lake. Of course, the court held that the Land Department could not be restrained from investigating whether or not there was government land between the line defined in the patent and the lake. So here, the Department was well within its rights in ascertaining the boundary between the patented land and the government domain. But when that had been accomplished, and the matter had been closed by final order of the Secretary, the jurisdiction of the officials of the government ceased. Indeed, the distinction is clearly pointed out by the court in the Kerwan decision, as follows: "*Noble* v. *Union River Logging R. Co.* 147 U. S. 165, 37 L. ed. 123, 13 Sup. Ct. Rep. 271, is not to the contrary, for that was a case where the executive department had confessedly finally acted, and then attempted to resume jurisdiction, and an injunction was sustained."

The rule is uniform that when patent passes from the government, the legal title passes with it, and all supervision or control over the land patented ceases in the officials of the government. In *Brown* v. *Hitchcock,* 173 U. S. 473, 43 L. ed.

772, 19 Sup. Ct. Rep. 485, cited by counsel for defendant, as
in many of the cases cited, the title had not passed by patent,
and the court approved the rule announced in *United States* v.
*Schurz,* 102 U. S. 378, 396, 26 L. ed. 167, 171, as follows:
"Congress has also enacted a system of laws by which rights
to these lands may be acquired, and the title of the government
conveyed to the citizen. This court has with a strong hand
upheld the doctrine that so long as the legal title to these lands
remained in the United States, and the proceedings for acquir-
ing it were as yet in fieri, the courts would not interfere to
control the exercise of the power thus vested in that tribunal.
To that doctrine we still adhere. But we have also held that
when, by the action of these officers and of the President of the
United States in issuing a patent to a citizen, the title to the
lands has passed from the government, the question as to the real
ownership of them is open in the proper courts to all the con-
siderations appropriate to the case."

The land embraced within the grant was never a part of the
public domain of the United States. The rights of the grantee
were preserved by the stipulations of the treaty with Mexico.
When the extent of his rights was finally ascertained and con-
firmed by the special tribunal commissioned by Congress for
that purpose, nothing remained for the Land Department but
to survey the lines and issue a patent. With the approval of
the survey and the issue of the patent, the whole matter passed
beyond the control of the Department. For fraud practised,
either in making the survey or procuring the patent, the matter
was still beyond the jurisdiction of the Department, but subject
to a proceeding in court to annul the patent, as was attempted
in the *Hancock Case.*

It may be stated broadly, therefore, that the jurisdiction
of the officials of the Land Department over public lands passes
with the delivery of a patent therefor. In *Moore* v. *Robbins,*
96 U. S. 530, 533, 24 L. ed. 848, 850, it was said directly that
it was a part of the daily business of the officers of the Land
Department "to decide when a party has by purchase, by pre-
emption, or by any other recognized mode, established a right

to receive from the government a title to any part of the public domain. This decision is subject to an appeal to the Secretary, if taken in time. But if no such appeal be taken, and the patent issued under the seal of the United States, and signed by the President, is delivered to and accepted by the party, the title of the government passes with this delivery. With the title passes away all authority or control of the Executive Department over the land, and over the title which it has conveyed. * * * The functions of that Department necessarily cease when the title has passed from the government."

It logically follows that, with the approval of the Hancock survey and the issue of the patent conveying to the grantee the lands therein described, the jurisdiction of the Land Department ceased. The right of the Department later to locate the line for the purpose of establishing boundaries of adjacent public lands was limited to the Hancock survey. As we have observed, and as the law required, if the station marks of the Hancock survey could not be found, it was the duty of the Department, as was done by the Sickler survey, to establish the monuments by courses and distances as defined by Hancock and called for in the patent.

The approval of the Sickler survey was an official determination of the whole matter. For years this was accepted, and the adjacent public lands were settled upon and disposed of on that basis. After the patent had been outstanding for over forty years, and the re-establishment of the original survey had been approved for many years, the present order was made. We think it is beyond the jurisdiction of the Secretary to thus revoke the order of his predecessor finally determining outstanding vested rights. "One officer of the Land Office is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court." *United States* v. *Stone,* 2 Wall. 525, 535, 17 L. ed. 765, 767. Or, as was said by Mr. Justice Miller in *United States* v. *Schurz,* 102 U. S. 378, 402, 26 L. ed. 167, 173: "From the very nature of the functions performed by these officers, and from the fact that a transfer of the title from the United States to another

owner follows their favorable action, it must result that at some stage or other of the proceedings their authority in the matter ceases. It is equally clear that this period is, at the latest, precisely when the last act in the series essential to the transfer of title has been performed. Whenever this takes place, the land has ceased to be the land of the government; or, to speak in technical language, the legal title has passed from the government, and the power of these officers to deal with it has also passed away."

An order of the Secretary of the Interior, revoking the order of his predecessor re-establishing and monumenting the boundary of plaintiffs' grant in accordance with the description in the patent, and arbitrarily substituting a survey considered and condemned by his predecessor, thereby greatly reducing the area of plaintiffs' patented grant, is an exercise of power equivalent to the revoking of a patent. It would amount to devesting plaintiffs of their property without due process of law, since a patent can only be annulled or canceled by a court. Any attempt to thus interfere with rights so vested may be enjoined. In *New Orleans* v. *Paine*, 147 U. S. 261, 264, 37 L. ed. 162, 163, 13 Sup. Ct. Rep. 303, the court, referring to *Noble* v. *Union River Logging R. Co.* 147 U. S. 165, 37 L. ed. 123, 13 Sup. Ct. Rep. 271, in connection with the question it then had under consideration, said: "In that case it appeared that the only remedy of the plaintiff was to enjoin the Secretary of the Interior from revoking his approval of a certain map which operated as a grant of land. His contemplated action amounted in effect to the cancelation of a land patent. So, in this case, if it were made to appear that the former survey had been completed and approved in such manner that all the lands included within the lines of the former survey had become vested in the plaintiff, it is possible that it might be entitled to an injunction against any act which would have the effect of disturbing or unsettling a title thereby acquired."

The grantee and his successors have been in undisturbed possession of the patented area for over forty years. Considering a similar situation, involving the power of the Secretary of

the Interior, by an order made in 1861, to challenge a survey of the south line of the Fort Leavenworth Military Reservation made and approved in 1830, the court, in *United States* v. *Stone, supra*, said: "It was made in the year 1830, and since that time both parties have held possession and claimed up to the lines then established by the survey. In the case of private persons, a boundary surveyed by the parties and acquiesced in for more than thirty years could not be made the subject of dispute by reference to courses and distances called for in the patents under which the parties claimed, or on some newly discovered construction of their title deeds. We see no reason why the same principle should not apply in the present case."

This is the only principle upon which the security of title can rest. If power rests in the Secretary of the Interior to cancel the orders of his predecessors finally determining property rights simply because he differs from them in opinion, there would be no such thing as a vested title derived from the government. If an order can be revoked forty years after issue of patent, and ten years after final re-establishment of the lines of the patented grant, it can be done after the lapse of a hundred years. Upon the finality of proceedings in the Land Department depends the security of titles emanating from the government. The present order, if carried into effect, would impair the title of plaintiffs as vested by the terms of the patent. It is, therefore, beyond the jurisdiction of the Secretary, and a restraining order should issue.

It follows that there can be no question of the jurisdiction of the court to restrain the Secretary from carrying the order complained of into effect. It would deplete the acreage of land patented by the government and impair the vested rights of plaintiffs. The United States is not a party in interest, since the survey in question merely defines the boundary line of lands to which title never vested in the United States, except as trustee for the Mexican grantee, and to which, in confirmation of the trust, a patent had long since issued. The threatened action of the Secretary is *ultra vires*. Discretionary power cannot be invoked, since there is no fact or question within his

jurisdiction to be investigated or determined.   In such cases
it has been held repeatedly by the courts that injunction is
the appropriate remedy.   If an officer of the government is
without lawful power or jurisdiction to do the thing complained
of, he may be enjoined with the same propriety as by mandamus
he can be compelled to perform a duty imposed upon him by
law.

The decree is reversed with costs, and the cause is remanded
with directions to enter a decree restraining the defendant, Sec-
retary of the Interior, from proceeding to carry the order com-
plained of into effect.                *Reversed and remanded.*

An appeal to the Supreme Court of the United States was
allowed June 2, 1917.

Mr. Justice Hitz, of the Supreme Court of the District of
Columbia, sat with the Court in the hearing and determination
of this appeal, in place of Mr. Chief Justice Shepard.