[Decided January 18, 1888.]

## LINDLEY MEEKER v. JOHN GILBERT.

3 w 369
1    407
3    591

3 w t 369
29    650

1. INJUNCTION—WHEN LIES—TRESPASS—ADEQUATE LEGAL REMEDY.—A complaint averring that defendant, an adjoining land owner, had removed the division fence between them over on to plaintiff's land and withholds possession of so much thereof as is thus inclosed, thereby obstructing a way used by plaintiff to reach other portions of his farm, to his great damage, etc., states a cause of action at law under the Code (chap. 46) for the recovery of an interest in real property, and equitable relief will not be granted. The fact that the allegations in complaint of irreparable injury, inadequate remedy at law, and multiplicity of suits, not being sustained by the case as made, were not denied by the defendant, is immaterial.

2. JURY—RIGHT OF JURY TRIAL—WAIVER OF.—Section 204 of the Code provides that "an issue of fact shall be tried by a jury, unless a jury trial be waived," and that "a waiver shall be by stipulation of the parties filed, or by oral consent of the parties in open court entered of record," and section 245 provides that it may also be waived by "failure to appear at the trial." Defendant demanded a jury on the original complaint, but, after the latter had been amended, went to trial without again demanding a jury, but requested the appointment of a reporter to take the evidence: *Held,* that this did not operate as a waiver of his right to a jury, and that section 204 was mandatory.

APPEAL from the District Court holding terms at Vancouver. Second District.

24

The material facts are stated in the opinion of the court.

*Mr. B. F. Dennison,* for the Appellant.

When a bill in chancery sets forth facts which would support an action at law, the latter is the appropriate remedy, and the bill fails for want of equitable jurisdiction. (*Litchfield* v. *Ballou et al.*, 114 U. S. 190.) The allegation that the plaintiff will be irreparably injured is not sufficient. *Facts* must be stated from which the court may judge of the injury and its extent. (*City of Portland* v. *Baker,* 8 Or. 356.) Equity will not interfere to restrain a trespass where the defendant is solvent. (*Kennedy* v. *Guise,* 62 Ga. 171.) A bill in equity is not the proper means to recover possession of land of which the complainant is out of possession. Such a bill should be dismissed by the court on its own motion. (*Lewis* v. *Cocks,* 23 Wall. 466.) A bill in equity will not lie if it is in substance and effect an ejectment bill, and if the relief it seeks can be obtained at law by an action of ejectment. (*Killian* v. *Ebbinghaus,* 110 U. S. 568.) The fatal objection to the suit is, that it is in fact an attempt by the party claiming the legal title to use a bill in equity as an action of ejectment. The record makes this apparent. (*Wolcott* v. *Robbins,* 26 Conn. 236; *Wetherbee* v. *Dunn,* 36 Cal. 249, 95 Am. Dec. 166; *McAlpine* v. *Tourtelotte,* 24 Fed. Rep. 69; *Sultan* v. *Providence Tool Co.;* 23 Fed Rep. 572; *Ellis* v. *Davis,* 109 U. S. 493–4; *Lumber Co.* v. *Town of Hayward,* 20 Fed. Rep. 422; *North Penn. Coal Co.* v. *Snowdon,* 42 Pa. St. 488.) It is the universal practice of the courts of equity to dismiss the bill if it be grounded upon a merely legal title. In such case the adverse party has a constitutional right to a trial by jury. (*Lewis* v. *Cocks, supra; Grand Chute* v. *Winegar,* 15 Wall. 373; *Killian* v. *Ebbinghaus,* 110 U. S. 573.) Trial by jury was not waived in any of the modes provided by section 245 of the Code.

*Messrs. Gearin & Gilbert,* for the Appellee.

In ejectment all that plaintiff could have sued to recover would have been the parcel that defendant had actually

seized.   No injunction could have been had to prevent him
from carrying out threats to remove the board fence and take
possession of more land and obstruct the plaintiff's road.
This is too clear to require argument.   There was no ade-
quate remedy at law.   The absence of a plain and adequate
remedy at law affords the only test of equity jurisdiction,
and the application of this principle to a particular case must
depend altogether on the character of the case as disclosed
by the proceedings.   Legal compensation refers solely to
the injury done to the property taken, and not to any col-
lateral or consequential damages to the owner by trespass.
(*Watson* v. *Sutherland*, 5 Wall. 74, 79.)   The legal remedy
is not adequate simply because a recovery of pecuniary dam-
ages is possible.   It is only adequate when a party can by
one action at law recover damage which constitutes a com-
plete and certain relief for the whole wrong—a relief as effi-
cient as that given by a court of equity.   (3 Pom. Eq. Juris.
sec. 1357, note 1.)   Where the remedy at law is not as
practical and efficient to the ends of justice and its prompt
administration as the remedy in equity, resort may be had
to equity.   (*Clark* v. *Jefferson R. R. Co.*, 44 Ind. 248.)   The
defendant did not demand a jury trial upon the issues created
by the amended complaint.   Neither did he demur to either
the original complaint or the amended complaint upon the
ground of the want of equity in the bill or jurisdiction of a
court of equity.   Neither did he plead in his answer that the
plaintiff had an adequate remedy at law.   He waived all these
objections and went to trial, and now, after the case has gone
against him, he says, for the first time, a court of equity had
no jurisdiction.   When the defendant neglects to raise any
objection to the jurisdiction of the court until after the tes-
timony in the cause has been taken, it is too late to raise the
objection that the complainants had an adequate remedy at
law.   (*Cummings* v. *Long I. R. R. Co.*, 11 Paige, 602.)   It
is a general rule that he comes too late with this objection,
when he has by his answer put himself upon the merits.
(*Livingstone* v. *Livingstone*, 4 Johns. Ch. 290.)   If a defend-
ant in chancery answers, and submits to the jurisdiction of

the court, it is too late for him to object that the complainant has an adequate remedy at law. (*Stout et al.* v. *Cook*, 41 Ill. 447.) Where an action to enjoin actual and threatened trespass to plaintiff's land, roads, and fences, had, without objection to the kind of relief sought, been tried in the common pleas and district court and an injunction granted: *Held*, that the objection that there was an adequate remedy at law came too late on appeal to the supreme court. (*Culver* v. *Rogers*, 33 Ohio St. 537.) This objection to the jurisdiction on the ground of an adequate remedy at law, in the absence of a demurrer to the complaint, comes too late after the defendant has by his answer put himself upon the merits and asked the court to determine the equities in the suit. (*Kitcherside* v. *Myers*, 10 Or. 23; *Underhill* v. *Van Cortland*, 2 Johns. Ch. 369; *Whiting* v. *Root*, 52 Iowa, 292; *Sexton* v. *Pike*, 13 Ark. 193.) The want of jurisdiction should have been alleged in the court below, either by plea or answer, if the defendant intended to avail himself of it. It is too late to urge it in an appellate court, unless it appears on the face of the proceedings. (*Wylie* v. *Coxe*, 15 How. 417.)

Mr. Chief Justice JONES delivered the opinion of the court.

In the brief of appellee (the plaintiff below) he states his complaint as follows:

That on and prior to January 17, 1873, James Carty, Sr., was the owner in fee of the donation land claim No. 37, and that about said date he conveyed to James Carty, Jr., a portion thereof, described as follows:

"Being parts of sections 18 and 19, in township 4 N., R. 1 E., and section 24, in township 4 N., R. 1 W., and being the south half of the donation claim of James Carty, Sr., Not. No. 195, which said half of said donation claim is more particularly bounded and described as follows: Beginning in section 24, township 4 N., R. 1 W., at an ash tree on the right bank of Lake river, at a point 16 chains north and 6.27 chains west of the northwest corner of Arthur Quigley's donation land claim; the said point being the southwest corner

of said James Carty, Sr.'s donation land claim; thence east 37.50 chains," etc. (around the south half).

That prior to said conveyance they mutually agreed on the division line, from the point where the ash tree in said deed named stood on the bank of Lake river, for a distance of about 600 yards to where the line intersects the county road, running across the claim, and caused the same to be surveyed and marked on the ground by stakes.

That James Carty, Jr., thereupon entered into possession, and remained in possession of the same until on or about March 20, 1874, when he sold and conveyed to P. O'Leary, by the same description as in the deed to him, except that the land is described as beginning at a point 16 chains north and 6.27 chains west of the southwest corner of said claim, and no mention is made of said ash tree.

That O'Leary entered into possession of said land the same as his grantor had held, and remained in possession until on or about August 28, 1875, when he sold and conveyed the same to Stephen Shobert, by description the same as in his deed from James Carty, Jr., and that Shobert then entered into possession of the same land as held by his grantor.

That all of said parties to said conveyances in purchasing said land from their respective grantors had said line, so far as the same was surveyed and marked, pointed out to them as the division line, and recognized the same as such, and in all of said conveyances the parties granting conveyed with reference to said line so marked as the division line, and the grantees therein took to said line as such division line, and with the understanding and belief that the same was the true division line, and they entered into possession of said south half of said claim and held and occupied the same up to said division line as the division line and the north boundary of their land.

That said Stephen Shobert in the fall of 1875, or early in 1876, erected upon said division line so marked and staked a rail fence from said county road, a distance of about 300 yards, and up to the head of a lake covering the wester-

most portion of said land, and said fence, so erected by him, remained upon said land as a line or division fence between the north and south halves of said claim, until the commission of the wrongful acts of the defendant hereinafter referred to.

That on or about the 4th day of April, 1883, the said Stephen Shobert sold and conveyed said south half of said claim to the defendant, and in his deed therefor described the same as in the deed from O'Leary to Shobert.

That at the time of said conveyance and prior thereto, Stephen Shobert pointed out to defendant, as the division line of said donation claim and as the north boundary of defendant's land, the said rail fence and the direction of the same projected to Lake river, and the defendant so purchased the same with the understanding that such was his north boundary line.

That the defendant and O'Leary by agreement in January, 1884, caused said division line to be surveyed, and completed said division fence at their joint expense from the end of the rail fence and in a line with it, and on the line of the original survey and the position of the ash tree, and said boundary fence so made was recognized by defendant as his north boundary fence until the commission of the wrongful acts complained of.

That in June, 1884, plaintiff purchased the north half through mesne conveyance from James Carty, Sr., and his heirs, and in his deed the same was described thus: Beginning at a point in section 24, T. 4 N., R. 1 W., 16 chains north and 6.27 chains west of the southwest corner of the donation land claim of James Carty, Sr., said point of beginning being on Lake river, and running thence east, etc. (around the north half).

That said land, so enclosed on the south boundary by said fence made by Shobert and said fence made by O'Leary and defendant, was, until the commission of the wrongful acts complained of, in the actual, open, notorious, and peaceable possession of plaintiff and of his grantors.

That immediately north of said fence the plaintiff and his

grantors have, since 1876, used a road by which they have hauled farm products and goods to and from their steamboat landing on Lake river, and have had access to the county road, and the plaintiff has constant need of said road, and the same is his only means of access to Lake river or said landing, on account of a lake which extends across the farm and separates the lower part of the farm and Lake river from the upper part of the farm where the buildings are. That the lake extends nearly to the fence, and the road where it crosses the head of the lake has been made at great expense and trouble. That the defendant, claiming that his fence was not on the true division line, and that the true division line was fifteen feet to the north, but well knowing the premises, did on October 8, 1885, wrongfully and unlawfully break and enter upon plaintiff's land, and with force did break and tear down said rail fence built by Shobert, and did construct the same on plaintiff's land at a distance of about fifteen feet north from where the same had stood, and thereby closed up the portion of plaintiff's road lying next thereto, and took possession of and closed up plaintiff's gate at the county road, and that the defendant threatens to and is about to tear down the remainder of the fence, the post and board fence, and erect the same upon the plaintiff's land, fifteen feet further north, and take possession of and enclose the remainder of plaintiff's road to said river and said landing, and prevent his access to said landing and the portion of his farm lying beyond the lake. That there is no other place where the plaintiff can construct a road across the lake or reach his landing or any landing on his river front, save by the outlay of a large sum of money and great labor and expense. That all of said acts have been done with violence and a large force of men, and without the consent of the plaintiff.

That said beginning point of the division line and the western terminus of said board fence is 16 chains north and 6.27 chains west of the southwest corner of said donation claim as the same was originally surveyed, and as the same was recognized and acquiesced in by defendant and

his grantors in possession, and the owners of the Quigley donation claim adjoining it on the south, for at least twenty years before the commencement of the suit; and as recognized and acquiesced in by all the parties to the conveyances mentioned in this complaint.

That by reason of the premises and the conduct of defendant in constructing the line fence by agreement with O'Leary, etc., and by acquiescing in and recognizing same as division line, he is estopped from now claiming to the contrary.

That plaintiff has no adequate or speedy remedy in the premises save by the injunction and decree of the court, and, unless restrained by the decree of the court, the defendant will carry out his said threats and deprive plaintiff of the use of said property and easements, the damage whereof will be irreparable.

Wherefore, inasmuch as plaintiff has no speedy or adequate remedy at law, and to prevent multiplicity of suits and irreparable injury, plaintiff prays for a decree requiring defendant to restore said fence so moved, and that the line where the same stood be decreed to be the true division line, and that the defendant be restrained from removing the board fence or obstructing such raised road to the landing, pending suit, and that the injunction be made perpetual.

The answer denied that the division line was as claimed by plaintiff; denied that the grantors of defendant had held with reference to said line, or said fence, as the north boundary of defendant's land; admitted the moving of the rail fence, but denied that defendant had entered on plaintiff's land; did not deny that he threatened to move the board fence to the same line, but alleged that the fence so moved was still upon defendant's land, and that the division line was still to the north of the fence as moved. That the rail fence built by Shobert was not on the true line; that Shobert did not know where the line was, nor where the line alleged to have been marked and surveyed was, as no visible marks of the same could be found.

Denied that defendant purchased from Shobert on the

understanding that the fence was on the line, or that Shobert pointed out the same as the line. Denied that Quigley and the owners of the Carty claim have ever acquiesced in the line of division between the two claims. That the line marked and surveyed in 1873 was not sixteen chains north of the south boundary of said claim, but was an erroneous line, and no visible marks of said line exist or have existed for many years.

The defendant made no denial of the allegation of plaintiff that he had no remedy at law, nor did he in the answer plead that plaintiff had a remedy at law.

There are other denials in the answer, and an allegation that defendant was the owner of the land in question at the time of the alleged trespass, and that he took possession of it and retains it as his own.

There was a reply.

These pleadings obviously make up such an action and issue as is specified in chapter 46 of the Code. The pleadings are unnecessarily lengthy, and contain much of recital, evidence, and argument that might well have been omitted.

A large portion of these recitals in the complaint are evidently made on the supposition that by a bill in equity this plain action at law may be changed to one of an equitable nature. And much stress is placed upon the statement in the complaint "that plaintiff has no adequate or speedy remedy save by injunction and decree of this court, and, unless restrained, defendant will carry out his threat and deprive plaintiff of the use of his property, to his irreparable damage. Wherefore, inasmuch as plaintiff has no speedy and adequate remedy at law, and to prevent multiplicity of suits and irreparable injury, plaintiff prays," etc.

These statements are not denied in the answer, and are therefore claimed to be admitted, but it is quite apparent that there is no such thing in this case as "irreparable injury, multiplicity of suits, or inadequacy of remedy at law." Chapter 46 of the Code of Washington provides a plain and adequate remedy. Any person having a valid interest in real property, and a right to the possession thereof, may recover

the same in the action provided for in that chapter, and damages for withholding the same. It is not claimed that the defendant is pecuniarily irresponsible, and there need be no multiplicity of suits.

The action provided for by this chapter is one to be tried by a jury, and we are satisfied that all the material allegations in the pleadings here being considered together bring the case within its provisions.

The long recitals of evidence, and the form of the prayer to the complaint, and similar faults in the answer, cannot be made to reach far enough to take the case out of the statute and transform it into a suit in equity.

The act of 1885–6 was not passed until after this action was commenced, and, if it had been, the facts alleged here as the cause of action would not bring it within the provisions of that act. (Id. sec. 1.)

It is admitted that the defendant demanded a trial by jury at a time when the cause was pending on an original complaint and answer in the court below, but it is claimed that afterwards plaintiff amended his complaint in order to make his grounds for equitable relief more fully appear, and that defendant answered that complaint, and went to trial without again demanding a jury, and thereby waived his right. It seems to be contended, also, that he waived his right by requesting the appointment of a reporter to take the testimony.

Chapter 46 of the Code, as already said, provides for a jury trial in actions of this character. Other provisions of the Code, relating to jury trials, are as follows:

"Sec. 204. An issue of fact shall be tried by a jury, unless a jury trial be waived. . . . . The waiver of a jury . . . . shall be by stipulation of the parties filed, or the oral consent of the parties given in open court and entered in the records." A proviso makes these provisions inapplicable to equitable causes.

"Sec. 245. Trial by jury may, with the consent of the court, be waived by the several parties in the manner following:

"1. By failing to appear at the trial.

"2. By written consent, in person or by attorney, filed with the clerk.

"3. By oral consent, in open court, entered in the minutes."

That the provisions of the Code in this case were followed, and a jury waived in any of the modes specified, is not contended; the claim is simply that he waived it by not redemanding a jury after the pleadings were amended and by requesting the appointment of a reporter.

There seems to be no element of waiver in the last ground stated. A request for a reporter may as well be made in a case tried by a jury as in one tried by the court, and is as frequent in practice in one as the other. It is no more a characteristic of a court of equity than of a court of law, and is without any significance in the respect here claimed in any case.

If it be true that a jury may be waived by mere silence, it would seem that some provision would have been made in the Code to that effect.

The legislature have carefully provided that a jury may be waived by consent of the court, by written stipulation filed, or orally, in open court, if entered on the record. It would seem that no positive enactment would be necessary to make either of these modes an effectual waiver, and yet we are asked to say that mere silence is a waiver when not so made by statute.

As a matter of practice, and with seeming justice to a party, such silence, when a case is called for trial, might well be held to be a waiver, and the reason of the matter commends itself to our judgment, and would prevail were it not for the positive terms of the Code, and the consideration that the legislature, in these provisions whereby parties are to bind themselves by solemn record, must have intended the exclusion of other modes of waiver; at least these provisions seem to exclude the idea of a waiver by silence.

It is not without regret that in a case of as small pecuniary moment as the present one, we feel compelled to

reverse the judgment below; but if we are right in our con-
clusions, no other course is open.

Let the findings and judgment herein be vacated, and the
cause be remanded for a new trial.

LANGFORD J., TURNER, J., and ALLYN, J., concurred.

A motion for rehearing was made and denied on January
24, 1888.

Mr. Chief Justice JONES delivered the opinion of the
court.

Appellee files a petition for a rehearing in this action,
and under section 483 of the Code such petition is the
argument of the petitioner in support of the application;
the adverse party is not heard unless the court deems a
reply to the argument necessary.

The petitioner now claims that on a full consideration of
the authorities by him cited, it will appear that this is a case
for equitable relief, and he presents a review or statement
of the facts in the case.   We gave particular attention to
the facts before writing the opinion, and it is not necessary
here to review or state them.

We understand the rule to be, that equity will not relieve
against a mere trespass, or threat of trespass, when the
injury is not irreparable, or a destruction of the estate in-
volved.

If the injury may be compensated perfectly by damages
recoverable by ordinary course of law, and possession main-
tained or recovered by legal proceedings, how can it be
said that there. is a destruction of the inheritance or a rem-
ediless injury?

Even in the liberal practice now prevailing, a court of
equity will not except such a case from this rule, unless,
indeed, it may be in an exceptionally strong case, and even
then it goes upon the ground of an irreparable injury or
urgent necessity.   Waste may be restrained where one party
is in possession and an action at law is pending to try the
title; but that does not change the action at law to one in
equity.

Under our system there is but one form of action, denominated a civil action, and the facts alleged in the pleadings are alone to be looked to to ascertain whether the relief is to be equitable or legal. The form or manner of the allegations has no significance in that regard; the prayer of the plaintiff or defendant is without weight. The manner in which the parties may have thought best to treat it in their pleadings is unimportant; the question is as to the facts alleged.

In some of the states, under another system, a demurrer to a bill is allowed on the ground that there is no equity apparent, but here that is not a ground of demurrer; and whatever the form of the pleading, whatever the prayer may be, the question, so far as the sufficiency of the allegations is concerned, is, does the pleading state facts sufficient to constitute a cause of action, if it is raised by demurrer to a complaint, or to constitute a defense, if it be interposed to an answer?

If irrelevant or redundant matter is alleged, it may be stricken out on motion, but the adverse party may disregard it and answer to the merits if he so prefers; and even if he answers such matter, it does not change the character of the irrelevant or redundant matter—the material facts are still of controlling force.

In the answer of the defendant the question cannot be raised, for he can do only two things in his answer, viz., deny the allegations of the complaint, and allege new matter constituting a defense to the facts in the complaint or facts constituting a counter-claim.

It is true, if any of the grounds of demurrer specified in section 77 of the Code do not appear on the face of the complaint, the objection may be taken in the answer; but the matter here urged is not ground of demurrer under that section, and cannot therefore be raised either by demurrer or answer.

We are not without notice of decisions to the effect that where the parties go to trial without raising the question as to whether this action was one at law, or in equity, they are

said to have waived it and cannot raise it on appeal; and we are cited to 33 Ohio St. 537, but in that case the court expressly states that the question ought to have been raised by demurrer or answer, which, as we have seen, cannot be done here, and also the court seems to hold that it was a doubtful question whether the plaintiff was not as of right entitled to equitable relief; and it is not disputed that if there existed under our practice a demurrer to the relief asked, and such demurrer was not interposed, the defendant would be excluded, unless saved by a statutory provision.

The cases cited in the Ohio case seem to go on the same ground.

In *Stout* v. *Cook*, 41 Ill. 447, the court proceeds on the same theory as in the Ohio case; and so also the case of *Boorman* v. *Sunnuchs*, 42 Wis. 233, which, as the court holds, was a case of equitable cognizance.

The rule in Oregon is the same and for the same reason, viz., the question should have been raised by demurrer; and so with other authorities cited. Counsel now also asks a rehearing upon the question of waiver of a jury trial by silence. We have re-examined the question to the full extent possible under the limitations of time and opportunity to consult authorities open to us, and are satisfied with our former ruling. We find no decision, under a statute similar to our own, in which the rule contended for is asserted. (Code, section 204.) It is true there are, apparently, cases sustaining such a waiver under statute similar to section 245 of our Code—it seems to be so in California—but our section 204 is mandatory, and there is nothing in this record showing a waiver in the methods there provided.

An examination of the numerous authorities cited by appellee strengthens our convictions as to the correctness of our conclusions upon the points decided. A rehearing is denied.

Turner, J., Allyn, J., and Langford, J., concurred.