KENNEDY v. ELLIOTT. CRAINE v. SAME. LAMONT v. SAME.

(Circuit Court, D. Washington, W. D. February 23, 1898.)

1. QUIETING TITLE—ALLEGATIONS OF COMPLAINTS—LEGAL TITLE.
   Plaintiffs had not acquired the legal title to the lands they claimed. They did not allege that they were entitled to possession, nor that defendant claimed the title or interest therein adversely to them, or had done or threatened to do any act which may cast a cloud on their title, and there was no prayer for a decree to quiet title or remove a cloud. *Held*, that plaintiffs were not entitled to equitable relief quieting title, either under 2 Ballinger's Codes & St. Wash. § 5500, or on general equitable principles.

2. SAME—DISPUTED BOUNDARY LINE BETWEEN STATES—RELIEF IN EQUITY.
   While there is a controversy between two states as to the location of the boundary line between them, one whose title to tide lands is derived from one of the states, and depends upon the location of such line, cannot maintain a suit to quiet his title against one who claims by grant from the other state.

3. INJUNCTION—INTERFERENCE WITH PLAINTIFF'S BUSINESS—EVIDENCE.
    Before restraining defendant from interfering with plaintiffs' business oper-
    ations, the court must find that defendant has interfered or threatened to
    interfere therewith in a manner to cause plaintiffs irreparable injury.

4. TRESPASS—REMEDY AT LAW.
    For a mere naked trespass by going upon land without license, where no
    injury is being done to the premises, an action at law for damages affords
    an adequate and complete remedy.

These were suits in equity brought by Ferguson Kennedy, Thomas
Craine, and John Lamont, respectively, against J. G. Elliott.

Carey & Mays, for plaintiffs.
Fulton Bros., for defendant.

HANFORD, District Judge. The parties to these suits are all citi-
zens of the state of Washington. The suits were originally com-
menced in the superior court of the state of Washington for Wahkiakum
county, and were removed into this court by the defendant, on the
ground that in each of the cases there is a controversy between citizens
of the same state, claiming lands under grants from different states.
The land in controversy is a sand island, called "Miller Sands," situated
in the lower Columbia river, the river being the boundary between the
states of Oregon and Washington. In his answer the defendant sets
up a claim to the whole of said island by virtue of an alleged grant
from the state of Oregon, and each of the complainants claims a part of
said island by virtue of contracts to purchase the same from the state
of Washington. This island is classed as tide land, being a mere de-
posit of sediment and sand, entirely submerged when the river is at the
stage of ordinary high tide. Neither of the parties have any improve-
ments, or other evidence of actual possession of the island, except a
floating house, placed there by one of the complainants since these suits
were commenced. The parties are all fishermen, engaged during each
fishing season in catching salmon in the Columbia river, and this island
is valuable to them as a place for drawing seines. The complain-
ants aver that the defendant has interfered with them in their use of
the island by going there and taking fish by the use of seines, and that
he threatens to continue such interference, and on that ground they
each ask for relief by injunction, to restrain the defendant from tres-
passing.

The Columbia river, from the Oregon shore to the Washington shore,
opposite Miller Sands, is more than five miles wide, and it is divided by
a number of islands, and has three channels. Miller Sands is south of
the northernmost channel, which at present, and since the year 1882,
has been the route of all ships and large vessels navigating the Colum-
bia river. The middle channel, which is south of Miller Sands, is the
widest channel, and was traveled by all large vessels from the year
1851 until 1882. It is still used by steamboats and small vessels, but,
by reason of sand bars forming therein, ocean-going vessels have been
compelled to take the northernmost channel. The third channel, which
is nearest to the Oregon shore, is, and has been, navigable for only
light-draft steamers and small boats. The cases have been argued
upon the theory that the ultimate determination of the right of the
parties depends upon the location of the boundary line between the two

states; for, if the middle of the main ship channel which was known and used at the date of the act of congress setting off Washington territory from Oregon, and defining the boundary between the two territories, and at the date of the adoption of the constitution of the state of Oregon, in which the boundary of that state is defined, is the true and permanent boundary between the two states, the defendant has no lawful or just claim to the land in controversy; and, on the other hand, if the middle of the main ship channel known and used since the year 1882 has become and is the present boundary between the two states, the plaintiffs have no lawful or just claim. The defendant, however, has raised a question as to the right of the complainants to relief in a court of equity, and claims that, as he has not done or threatened any destruction of the property, or permanent injury thereto, the complainants have an adequate remedy at law, by actions to recover damages, if there is, or shall be, any just ground for charging him with the commission of a trespass.

The main question in dispute between the parties, as to which channel of the Columbia river is the boundary, and which state could lawfully sell the island, and the able arguments of counsel, have been considered; but the issues in the pleadings are too narrow to call for a decision of that question. The complainants aver that they are in possession, only equitable relief is prayed for, and the cases have been tried in conformity with the practice in equity; therefore, they cannot be regarded as actions to recover possession of real property. Nor can they be viewed as proceedings under the statute of this state, authorizing any person having a valid, subsisting interest in real property, and a right to the possession thereof, to maintain an action against any person claiming adversely the title, or some interest therein, for the purpose of obtaining a declaratory judgment quieting the plaintiffs' title, or removing a cloud therefrom (vide 2 Ballinger's Codes & St. Wash. § 5500), because the bills of complaint do not aver that the complainants are entitled to possession, nor charge that the defendant claims the title, or any interest therein, adversely to them, nor that he has done or threatened any act which may cast a cloud upon their title, and there is no prayer for a decree quieting their titles or to remove any cloud. The same objections are obvious, and fatal, if the cases are to be considered as suits to quiet title, under the rules and practice of courts of equity, irrespective of any remedy or procedure provided by statute.

Besides the objection that the issues in the pleadings are too narrow, there is an additional obstacle in the way of obtaining equitable relief, independently of the statute; for the complainants have not acquired legal titles to the land which they claim. They show only executory contracts to purchase from the state of Washington, whereby the state has covenanted to convey to each a particular tract, in consideration of full payments of the purchase price in annual installments, with interest. And if there is a controversy between the states of Oregon and Washington as to the location of their common boundary (the arguments assume that there is such a controversy between the two states), then, while that controversy remains undetermined, there is such uncertainty as to the validity of any title which the complainants can

acquire from the state of Washington as to preclude them from establishing their rights conformably to the rules of procedure in courts of equity. If their titles were complete, as they can be made by the issuance of patents pursuant to their contracts with the state of Washington, the complainants would still be barred from suing in equity, independently of the statute, by the rule which requires a plaintiff in a bill to quiet title to show by incontestable evidence that he has the legal title. 1 Pom. Eq. Jur. §§ 252, 253; Holland v. Challen, 110 U. S. 15–26, 3 Sup. Ct. 495; Frost v. Spitley, 121 U. S. 552–558, 7 Sup. Ct. 1129; Whitehead v. Shattuck, 138 U. S. 146–156, 11 Sup. Ct. 276; Wehrman v. Conklin, 155 U. S. 314–333, 15 Sup. Ct. 129. The only cases which I have found in which the supreme court has adjudicated adverse claims of individuals to real estate, where the location of a boundary line between adjoining states had to be ascertained in order to determine the rights of the litigants, are Handly v. Anthony, 5 Wheat. 374–385, and Howard v. Ingersoll, 13 How. 381–429. Both were actions at law in the form appropriate for the trial of questions of title. In Fowler v. Miller, 3 Dall. 411–415, and in Rhode Island v. Massachusetts, 12 Pet. 657–754, the supreme court expressed the opinion that United States circuit courts have power to decide questions as to the boundary of adjoining states in suits between individuals, when it is necessary to decide such questions in order to determine the rights of parties. But these opinions do not intimate that disputes between individuals as to questions concerning state boundary lines can be cognizable in equity while there is any controversy between the states involving like questions.

The complainants having prayed only for preventive relief, by injunction, to restrain the defendant from interfering with them in their fishing operations upon the island, and having failed to show sufficient grounds for any other or different relief, the cases must be dismissed for lack of evidence. As a basis for an injunction against interference on the part of the defendant with the operations of the complainants in their business of fishing, it is absolutely necessary for the court to find, from the evidence, that the defendant has interfered or threatened to interfere in a manner to cause the complainants irreparable injury; and there is no evidence to justify such a finding. Each of the complainants has given testimony as a witness in his own behalf. Their testimony does not prove interference, but the contrary; for, by the admission of two of them, they have used the land which they claim in their fishing operations for years past, without interruption or interference, and the other complainant is silent as to the only issue presented by the pleadings. There is no other evidence in the case tending in any way to support the charge.

I hold, also, that for a mere naked trespass by going upon land without license from the owner, where no injury is being done to the premises, an action at law for damages affords an adequate and complete remedy, and the owner can have no ground for relief in equity. Meeker v. Gilbert, 3 Wash. T. 369, 19 Pac. 18. A decree of dismissal will be entered in each case.