## WHITTENBURG et al. v. UNITED STATES.
### No. 8806.

Circuit Court of Appeals, Fifth Circuit.
Dec. 15, 1938.

Rehearing Denied Jan. 13, 1939.

A. W. Cameron, of Corpus Christi, Tex., and Sid L. Hardin, of Edinburg, Tex., for appellants.

John S. L. Yost, Sp. Asst. to Atty. Gen., Douglas W. McGregor, U. S. Atty., of Houston, Tex., Jas. L. Abney, Asst. U. S. Atty., of Brownsville, Tex., and G. Osmond Hyde, Atty., Department of Agriculture, of Washington, D. C.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal asserts the unconstitutionality of the Agricultural Marketing Agreement Act of June 3, 1937. 7 U.S.C.A. § 601 et seq. The District Court sustained the Act and the orders of the Secretary of Agriculture issued pursuant to it and enjoined the appellants from further breach of them on a suit by the United States brought under Section 8a(6), 7 U.S.C.A. § 608a(6). The Secretary on July 9, 1937, made a general order establishing an area consisting of three counties in Texas for regulation of marketing of citrus fruits which established a Growers Industry Committee and a Shippers Marketing Committee, the former selected by

the growers, and the latter by the handlers of the fruits. These Committees were to investigate conditions and make recommendations to the Secretary, after public notice, touching necessary weekly regulations of shipments, allotments, and proratings. The handling of grapefruit and oranges in the current of interstate and foreign commerce, or which directly burdens, obstructs or affects interstate and foreign commerce in such grapefruit and oranges, was required to conform to the terms and conditions of the order. The order recites the preliminary findings required by the Act, and that a marketing agreement had been signed by handlers of 50% of the fruit to be affected shipped the preceding season, and that the order was favored by the producers during the previous season of two-thirds of the fruit to be affected. Thereafter, pursuant to recommendations of the Committees, the Secretary during October and November, 1937, made weekly regulations forbidding shippers to ship in interstate commerce and to Canada grapefruit grown in the said territory which fell below stated standards of size and quality. In general U. S. No. 3 grade, often referred to as "culls", were excluded from shipment. The appellants, independent handlers who bought their fruit from growers and later sold it, did not sign the marketing agreement and were shipping grapefruit in violation of the weekly regulations, contending and believing them to be unconstitutional. A fuller statement of the Act and the facts may be found in the opinion and findings of the District Judge reported D.C., 21 F.Supp. 713.

There is here no complaint that the preliminaries required by the Act have not been met, or that anything has been falsely found, or that any particular unfairness in administration has been practiced. The sole question presented is whether the Act which authorizes what was done is valid, the assertion being that on three general grounds it is unconstitutional: First, that its declared purpose is to regulate prices and production, contrary to the Tenth Amendment and not in a manner authorized by the Commerce Clause of Article 1, Sect. 8, U.S.C.A.Const. art. 1, § 8, cl. 3; amend. 10; Second, that it unconstitutionally vests legislative power in the Secretary of Agriculture, an executive officer; and in handlers of fifty percent of the fruit. Third, that it operates

to deprive nonconsenting handlers, including appellants, of their property without due process of law contrary to the Fifth Amendment, U.S.C.A.Const. amend. 5.

The original Agricultural Adjustment Act, as amended in 1935, was held unconstitutional in its provisions to limit farm production and lay processing taxes. The Commerce Clause was not involved. United States v. Butler, 297 U.S. 1, 63, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S. Ct. 374, 80 L.Ed. 513. In the opinion of Congress the portions of the Act relating to marketing agreements and the control of shipments in interstate and foreign commerce were unaffected by these decisions, and were reenacted with some changes into the present Act. Two appellate courts have agreed with Congress and have upheld these portions of the Act, even before their reenactment. United States v. David Buttrick Co., 1 Cir., 91 F.2d 66; Edwards v. United States, 9 Cir., 91 F.2d 767. The latter case contains a most elaborate discussion of the Act and of the constitutional questions raised. Kindred legislation touching the marketing of tobacco has recently been upheld against similar objections in Wallace v. Currin, 95 F.2d 856, in the Fourth Circuit, and by a Court of three judges in Mulford et al. v. Smith et al., D.C., 24 F.Supp. 919. We need say little additionally, and will content ourselves with a brief statement of the principles on which we think the Act is sustainable against the attacks here made.

First: Sect. 8c (1), 7 U.S.C.A. § 608c(1), which authorizes orders affecting "handlers", states: "Such orders shall regulate, in the manner hereinafter in this section provided, only such handling * * as is in the current of interstate or foreign commerce or which directly burdens, obstructs, or affects, interstate commerce in such commodity or product thereof." In sub-paragraph (6) relating to fruits there is equal care to restrict the limitation of total quantity, or grade, size or quality, to that which may be marketed or transported in the current of interstate or foreign commerce or which directly burdens or obstructs or affects the same. The orders in question are based on facts found which bring them within these restrictions. They are in form and substance direct regulations of interstate com-

522

merce and commerce with Canada. But it is argued that Sect. 2, 7 U.S.C.A. § 602, declares an unconstitutional object and purpose in these words: "It is hereby declared to be the policy of Congress—(1) Through the exercise of the powers conferred upon the Secretary of Agriculture under this title [chapter], to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish prices. to farmers at a level that will give agricultural commodities a purchasing power with respect to articles that farmers buy, equivalent to the purchasing power of agricultural commodities in the base period." Congress adds that the consumer is also to be regarded and price corrections are to be secured gradually, and not to be pushed beyond the level above indicated. It appears in the Act that prices are not to be directly fixed, but that the operation of an orderly marketing and the restriction of shipments are expected to make for stable and fairer prices by means of the factors that usually establish market prices. The purpose thus to affect prices is not the only purpose asserted by Congress, for what is quoted above is preceded by a declaration that the disruption of orderly exchange of farm commodities in interstate commerce destroys the value of agricultural assets, impairs the national credit structure, and burdens and obstructs the normal channels of interstate commerce. This really states the public aim of the Act, and marks it as intending to regulate and sustain interstate commerce for the public good. But if better prices to farmers be taken as the aim, it is only the correction of an injustice that has long been wrought by another use of the commerce power in the fixing of protective tariffs, by which revenue was not sought to be raised, but prices to manufacturers increased, largely at the farmers' expense. The tariff operates only indirectly to raise prices, but is very effectual. Differentials in freight rates are another exertion of. the commerce power which operates to change relative prices of the commodities affected in the same way. Such results of commerce regulation, though foreseen and intended by Congress, in no wise defeat the power to regulate. The Constitution does not forbid State or nation to legislate for the public good on economic lines. If the economic end is to be reached by an interstate regulation of commerce, the Congress may and must devise the regulation.

Second: The legislative power is vested in Congress. It cannot be abdicated or transferred to others. But legislation may provide for elaboration of details by others, and for discretion in the application of the law. Congress must provide an intelligible scheme and plan, but may leave a great deal either to a legislative commission or an executive officer. The degree of detail that the statute must fix is largely a matter of necessity and practice. As industrial life and business relations continue to develop and require more and more regulation, we may expect Congress to be compelled to leave more detail to other agencies. It has long been customary for legislatures to establish what are in effect subordinate legislatures in dependencies, in territories, and in cities; and while there is undeniably a delegation of very broad legislative power thereby, it has never been thought unconstitutional. Judges have always been allowed broad "discretion", even to determining for what time a man shall go to the penitentiary, or whether he shall go at all or be put on probation. They also exercise rule making power, and recently the Supreme Court was given power to supersede by rule even Acts of Congress touching matters of court procedure. The railroad commissions legislatively fix rates and rules of practice for utilities, often with no more definite guide than that they shall be just and reasonable. The authority to administrative officers to make rules and regulations is a common one, given in every federal income tax act, and in almost every newly established activity. The possible extent of such delegations cannot be delimited, because the future necessity for them cannot be foreseen. And Congress must be the first, if not the final judge, of the necessity. In the Act before us Congress has set a definite mark and has indicated the means of reaching it; has prescribed much that must be done and that may not be done. Every situation as it arises may require special treatment for which Congress could not wisely or effectively provide. Judgment upon the situation is to be exercised according to the standards in the Act by the Secretary. We cannot say that Congress has gone too far in giving him power and discretion.

The majority who sign agreements and the committees who recommend regulations are not given any legislative power. Their refusal to agree or recommend may prevent the Secretary from acting in some instances, but they can never force action.

Action taken is always that of the Secretary. These others gather and present information to give him a broader view of the situation. Their concurrence gives his action support and tends to assure its enforcement. But they have no actual power.

Third. The appellants had some small and inferior grapefruits for which they had a sale but were forbidden to ship them in interstate commerce during the time covered by the weekly orders. They bought them while the law was in force. The Secretary's orders did not confiscate them. The owners could sell them for use in the State if the State law permits, extract the juice, or use them otherwise than to glut the market by shipping them interstate or to Canada. Their liberty to make a desired use of them was for the public good suspended for a time, but their property was not taken. It is said they dare not buy grapefruit in the face of the law and so their liberty of contract, which is a form of property, is destroyed. But in fact they may buy all they wish, subject to the public right not to have the market upset with them. Such collisions between private right and exertions of police power for the public good result generally in the prevalence of the public good. Liberty and property have always been qualified by the ancient maxim: Sic utere tuo ut alienum non laedas. This Act requires notice to and hearing of those to be affected before the Secretary makes his orders, and for a judicial review thereof. Hearing was afforded in this case. Liberty and property have not been taken without due process of law.

Judgment affirmed.