**HAWTHORNE et al. v. FISHER et al.**

No. 266.—Civ.

District Court, N. D. Texas, Dallas Division.

June 18, 1940.

S. L. Lewis and Joseph W. Bailey, Jr., both of Dallas, Tex., for plaintiffs.

John A. Erhard, Asst. U. S. Atty., of Dallas, Tex., John S. L. Yost and W. Carroll Hunter, Sp. Assts. to Atty. Gen., and Melva M. Graney, Sp. Atty., of Washington, D. C., for defendants.

Before HUTCHESON, Circuit Judge, and BRYANT and ATWELL, District Judges.

ATWELL, District Judge.

Plaintiffs, R. C. Hawthorne, R. A. Hawthorne, and Raymon Hawthorne, brought suit in the state district court against V. T. Fisher, R. J. Cox, and E. V. Poynter, alleging that all parties were residents of Dallas County, Texas. That they are father and sons, and that they own, aggregately, 1361 acres of land in Dallas and Kaufman Counties. That such lands are farm lands, and that they pay taxes thereon to the state of Texas, and to such municipal corporations as have been established under the authority of the laws of that state. That a large portion of the lands are more suitable for the production of cotton than any other crop, and that the proceeds from cotton would be much larger than from any other crop.

That the defendants compose, operate, and are the directing heads of the County Agricultural Conservation Association, but that they are not federal officials, nor, employees. That they are not appointed in the manner required by the Constitution of the United States, but claim to be elected by members of the County Agricultural Conservation Association. That by virtue of that election, they claim to have the

right to perform the acts and do the things complained of by the plaintiffs, under and by virtue of the Agricultural Adjustment Act of 1938, as it applies to cotton. That they are not paid by the United States, but are paid for their work by members of the said Association, from moneys to be received by them in payment for a failure, or, refusal to plan certain acreages of certain crops.

That the defendants, by virtue of the aforementioned law, claim the right to, "and have already come upon the lands of the plaintiffs to measure said lands in order to find the total tillable land thereon, and the total area in cultivation, and unless the relief prayed for herein is granted, will continue to do so."

That the defendants have reported said information so gathered to a so-called state committee organized under the said Conservation Act, who in turn have reported the same to the Secretary of Agriculture, and will continue to so report, unless restrained. That the defendants have arbitrarily set an amount of acreage on the plaintiffs' lands which can be planted in cotton without being subject to the payment of penalties, and have arbitrarily fixed an amount of acreage which cannot be planted in cotton unless subject to penalty. That the defendants have refused permission to the plaintiffs to sell any cotton grown by them on the lands involved during 1939, and "have harassed and annoyed the purchasers of said cotton in a deliberate attempt to prevent said purchasers, and all other would-be purchasers from buying any of the cotton now, or hereafter grown by these plaintiffs upon the lands involved, * * * and will continue to harass and annoy these plaintiffs to their great and irreparable loss and damage. That the action of the defendants and the action threatened by the defendants have and will result in damage to the extent of $50,000.00 to the property of the plaintiffs."

That the defendants have and do arbitrarily set the amount of production in various crops raised upon the said lands. "That the defendants have made and are now publishing false reports as to the amount of land in cultivation, and the amount of crops so cultivated, and seek upon the basis of said reports to set an arbitrary and capricious amount of land in use and in production of various crops." That they seek to prevent the use of the land by the plaintiffs and thereby restrict the ability of the land to meet the fixed burden of taxation. That such actions cause the value of the land to depreciate and that the damage is irreparable because the defendants, as an organization, are not solvent, and can not respond in damages for the acts and conduct of which the plaintiffs complain. That such acts prejudice the title and the right of the plaintiffs to the use and benefit of the lands. That the defendants have no accurate nor dependable basis in record, and no legal right to make the conclusions and reports which they do make and publish and force upon plaintiffs. That the defendants intend to, and will issue to the plaintiffs only a certain amount "of cards of a distinctive color, which purport to permit these plaintiffs to sell without tax, or without harassment, embarrassment and annoyance, a certain amount of cotton, and have threatened in the future to harass, annoy, and penalize these plaintiffs as to all other amounts of cotton, which they may attempt to sell, and for which the defendants will not issue such distinctive cards."

They then allege that the defendants have no right or authority to claim to be acting as officers of the "federal government, or, as administrative, or, executive officers under any law passed by the congress of the United States, and, furthermore, these plaintiffs allege that the Act under which the defendants are claiming the right or authority to harass, or annoy, these plaintiffs, is wholly unconstitutional and void, in that by its very terms it delegates the legislative power to suspend or repeal the said Act in an unconstitutional manner to the growers of cotton in 1939, and wholly excludes any others who were not growers in 1939 from using their land and their property in such occupation or pursuit."

They then say that they are without adequate remedy at law, and pray for a temporary and permanent injunction, restraining the defendants from "seeking to measure, calculate or publish figures alleged to be the amount of land in cultivation now or in the past, * * * or the amount said land has produced now or in the past, or to derive therefrom any alleged general average production of said land, or from seeking to set, publish, or force the planting of any given number of acres in any given kind of crops, or preventing cultivation of said lands in any crops, or preventing cultivation of said

lands in any crops desired by the plaintiffs * * * or, from marketing any of the cotton which may be grown upon said land, and from harassing and annoying the plaintiffs in any form or manner in the marketing thereof, or from approaching any prospective purchaser or purchasers, ginners or handlers of said cotton for the purpose of impeding, hindering, hampering, or preventing the sale thereof," * * *.

Application to remove to this court was seasonably made and granted. Since injunctions were sought to restrain the operation, enforcement and execution of an Act of Congress on the ground of its unconstitutionality, a three-judge court was assembled in the manner provided by the Act of August 24, 1937, 50 Stat. 752, 28 U.S.C. A. § 380a. On May 23, 1940, an amended petition was filed, from which the above quotations are taken, and on May 29th, the defendants answered.

The defendants admit that they are members of the County Agricultural Conservation Association, and attach to their answer an exhibit which they say is the four page article of the Association under which they operate and which appears to be signed by H. A. Wallace, Secretary of Agriculture. This exhibit has ten articles. Section 4 of Article 4 provides that delegates to a county convention shall at the annual convention elect the county committee which shall consist of three farmers who are members and who are "actively participating, or co-operating in one or more of the programs described in Article 5." Article 5 provides the qualifications to be, engaged in farming, or, ranching, and deriving a substantial part of income directly therefrom; a resident of the community or county for which the committee is elected; has during the current year qualified for a payment or grant of aid in connection with the agricultural or range conservation, or, sugar program administered by the association in that county; is not holding any federal, state, or major county office filled by an election, or is not a candidate for such office; is not and has not been an officer or employee of any political party, or political organization; has not been removed for cause as committeeman or employee of any association, or from public office, or convicted of any fraud, larceny, embezzlement, or felony, unless such qualification is waived for good cause; is not a member of the state Agricultural Conservation Committee.

That such circular is issued by the Agricultural Adjustment Association, Department of Agriculture. That they were elected to such positions in accordance with Section 8(b) of the Soil Conservation and Domestic Allotment Act, as amended, 16 U.S.C.A. §§ 590g to 590q, and that their per diem compensation, as well as administrative expenses, are paid by funds advanced by the Treasury of the United States, upon monthly budget estimates, in conformity with Sec. 11 of said Act, 16 U.S.C.A. § 590k.

That pursuant to Sec. 388(a) of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C. § 1281 et seq., 7 U.S.C.A. § 1281 et seq., they are authorized by the Secretary of Agriculture in administering the cotton marketing quota provisions of that Act. That their activities are confined solely to the duties therein prescribed by the Congress, as "implemented by administrative regulations and instructions issued by the Secretary of Agriculture, under the authority of such acts."

That the Secretary of Agriculture is required, through such local committees, to determine quotas in pounds of lint cotton, farm acreage allotments, and the normal and actual production of cotton on such allotments; to publish and give notice of such allotments and quotas; to provide for the identification for such amounts of cotton subject to, and such amounts as are not subject to, the marketing penalty. The means of identification being the marketing cards issued to producers, and marketing certificates furnished by producers, for joint execution, at the time of marketing, by producers and buyers.

That they are charged with the duty of ascertaining the requisite cotton farm data for the administration, by the Secretary of Agriculture for the current year, of all farms in Dallas County, including those owned by the plaintiffs and that they "have sought only to perform the duties imposed upon them by said Act and regulations, including the making of certain measurements with respect to said farms."

They deny any act of trespass.

They deny that any cotton marketing quota for 1940–41 for the plaintiffs' farm has been established. They say that when such quotas are established that the plaintiffs, if dissatisfied, have a complete and adequate administrative remedy provided by Sections 363–366 of the Agricultural Ad-

justment Act of 1938, 7 U.S.C.A. §§ 1363–1366.

They then move to dismiss because the complaint fails to state a claim upon which relief can be granted. They also move to dismiss because of the lack of an indispensable party in that it is sought to restrain the administration and execution of the Act of 1938, authority over which is vested exclusively in the Secretary of Agriculture, when he is not a party to the suit.

This rather tiresome relation of the pleadings of the parties is indulged because of the great reluctance of courts to interfere with the lawful activities of the citizen in caring for and administering his own property. Many apologies are indulged by various authorities and philosophers for the support of legislation of this sort, prominent among which is the statement that the Act does not seek to control production. If there were a control of production it would clearly be unconstitutional, because the national government has no such authority. Its power over cotton, and the other crops mentioned in this particular legislation, grows out of the fact, whether assumed, or, proven, that such crops are interstate commerce; that they largely move in interstate commerce.

The tying together of soil conservation, out of which comes the benefit in federal checks, and the supervision of the farmers' marketing, is a policy which may not be criticised, nor congratulated. The farmers suffer the regulation because of the beneficial payments. Probably there has been no such increase in the value of their crops as would justify, or, excuse the quiescent attitude of the farmer.

■ It is academic to state that courts have nothing to do with the policy of an Act. If the Act is constitutional, the court can take no part in its destruction, or, in its restraint.

It has been conceded in open court argument that the Congress had the authority to pass the Act. Also, the facts were agreed, and they are substantially as plead. The alleged damages arise out of the inability to realize cotton profits which are larger than the returns from other crops on a particular 550 acres, the allotment and quota for the plaintiffs being only 180 acres thereof.

The two grounds upon which the Act is attacked here are, (a) that the defendants are not officers of the United States and have no right to act in the capacities in which they assume to act; (b) that after the Secretary of Agriculture shall have determined facts, through subordinates throughout the nation, and announced quotas and allotments, there may then be a "referendum," and if more than one-third of the voters are against the quotas and allotment they shall not become effective.

■ The bald statement of the first contention exhibits considerable merit. Officials are usually under bond. They usually take an oath as to the integrity of their actions. They are liable to dismissal for improper and unauthorized acts. They are marked individuals. The Constitution also provides how an official shall become such; the method of appointment and who shall make the appointment. The defendants are chosen by their neighbors. They receive no commission from the government. They are under no bond; they take no oath. See Sec. 2, Art. 2, United States Constitution. The Supreme Court of the United States, in the case of United States v. Hartwell, 1867, 6 Wall. 385, 73 U.S. 385, 18 L.Ed. 830, construed the term office to mean a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure duration, emolument and duties. See, also, United States v. Germaine, 1878, 99 U.S. 508, 25 L.Ed. 482; Hall v. Wisconsin, 1880, 103 U.S. 5, 26 L.Ed. 302; also, Auffmordt v. Hedden, 1890, 137 U.S. 310, 11 S.Ct. 103, 34 L.Ed. 674; Fairchild v. United States, C.C.N.J., 1899, 91 F. 297; United States v. McCrory, 5 Cir., 1899, 91 F. 295.

■ Respectable cases have voided and criticised such efforts to make use of individuals uncommissioned and not properly appointed. Shoemaker v. United States, 147 U.S. 282, 283, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Germaine, 99 U.S. 508, 512, 25 L.Ed. 482; Auffmordt v. Hedden, 137 U.S. 310, 326, 11 S.Ct. 103, 34 L. Ed. 674; United States v. Ferreira, 13 How. 40, 54 U.S. 40, 14 L.Ed. 42. The fact remains, however, that the Secretary of Agriculture has made the regulations pursuant to an Act of Congress. It is thought any agency may be utilized by the law-making body in any way that it sees fit that is not, in fact, an unconstitutional exercise of power. Keim v. United States, 177 U. S. 290, 20 S.Ct. 574, 44 L.Ed. 774; Mulford v. Smith, 307 U.S. 38, pages 44–46, 59 S.Ct. 648, 83 L.Ed. 1092; United States

v. Whittenberg, D.C., 21 F.Supp. 713, affirmed Whittenburg v. United States, 5 Cir., 100 F.2d 520.

As to the second ground, it must also be conceded that this is a representative form of government operated for the benefit of and by people through representatives. That the pure democracy method of legislation is not recognized in the system. All of the people do not speak except in the choice of such representatives. See Cooley's Constitutional Limitations, p. 244; United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

The complaint that the Congress provides for a law and then authorizes a minority of more than one-third to strike it down, is more wicked in statement than in fact. It is really taking care of the minority. It is a method chosen by the Congress for the determination of the will of that particular branch of agriculturists. It would seem that the Congress has such right. That in such referendum, minors, corporations and other parties who may be interested in farming have a right to speak, may appear a loose method, is unavailing. It does seem rather strange when we have suffrage requirements, but a court cannot very well shy at the strangeness of an Act. If the Congress had a right to pass the Act, the people alone have the right to strike it down. The remedy is political.

"Where all the effective means of inducing political changes are left free from interference, education in the abandonment of foolish legislation is itself a training in liberty. To fight out the wise use of legislative authority in the forum of public opinion and before legislative assemblies rather than to transfer such contest to the judicial arena, serves to vindicate the self-confidence of a free people."

■ But before we can rule the case we must dispose of the two motions by the defendants. (a) That there is no equity in the bill. (b) An indispensable party is absent. As to the first contention, it may be quickly said that equity will not relieve against an act which does not result in damage to property.

We shrink from announcing that one's home is no longer one's castle, but there is no allegation here of entry without consent. A consented entry will not support an action in trespass. Heller v. New York, N.

H. & H. R. Co., 2 Cir., 265 F. 192, 17 A. L.R. 823; Davis v. Shaefer, 2 Cir., 277 F. 1014. Again restraint is only issued against future injurious acts. Indian Land & Trust Co. v. Shoenfelt, 8 Cir., 135 F. 484; Kennedy v. Elliott, C.C., 85 F. 832; Baum v. Longwell, D.C., 200 F. 450; Kirwain v. Murphy, 189 U.S. 35, 23 S.Ct. 599, 47 L.Ed. 698.

An entry made under authority of law may not be restrained. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441. Sec. 374, Agricultural Adjustment Act, 7 U.S.C.A. § 1374. The Act of 1938 says, "The Secretary shall provide, through the county and local committees, for measuring farms," etc. See, also, Sec. 344(d).

■ The second contention is so serious that it, too, must be sustained. The defendants can do nothing for the enforcement of the Act. They merely assist in administration. Enforcement is vested exclusively in the Secretary. Sec. 376 of the Act. He is not a party. The consequences following a restraint are so far-reaching that it would be inappropriate to issue such a decree without giving him an opportunity to be heard.

An injunction would be ineffective for the plaintiffs and inappropriate so far as the Secretary is concerned. Yarnell v. Hillsborough Packing Co., 5 Cir., 70 F.2d 435; Janes v. Lake Wales Citrus Growers Ass'n, 5 Cir., 110 F.2d 653; Redlands Foothill Groves v. Jacobs, D.C., 30 F.Supp. 995; Federal Trade Comm. v. Claire Furnace Co., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978; Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621; Jewel Productions, Inc. v. Morgenthau, 2 Cir., 100 F.2d 390; National Conference v. Goldman, 2 Cir., 85 F.2d 66; Alcohol Warehouse Corp. v. Canfield, 2 Cir., 11 F.2d 214; Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068. Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, makes no different rule.

■ While what we have already said makes the dismissal of the bill imperative, we call attention to the fact that Sec. 362 of the Act provides that acreage allotment shall be made and kept freely available for public inspection in the county or other local administrative area, etc. That notice of the quota of a farm shall be mailed to the farmer. Administrative and judicial review of the marketing quotas is provided for by Sections 363 and 365. Sec. 363

gives the farmer the right to have his quota reviewed by the local committee within fifteen days after the mailing to him of the notice. Sec 365 gives him the right to appear in any court of general jurisdiction, or, in an United States District Court, in the county, or, district in which his farm is located.

It is true that this provision would seem to give the legislative consent to a suit against the administering committee, without the presence of the enforcing Secretary, but such a consent must be limited to the matter that it concerns, and to the form of the consenting.

With this right of review, there can be no judicial relief until the administrative remedy is exhausted. Myers v. Bethlehem Corp., 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638; Mulford v. Smith, supra.

The cause must be dismissed.

NOTE: Since this opinion was rendered, the Circuit Court of Appeals for the Fifth Circuit, in Troppy v. La Sara Farmers Gin Co., Inc., et al., 113 F.2d 350, July 2nd, has held that the Agricultural Adjustment Act of 1938 involved in this case, is constitutional.