**LAVITT et al. v. UNITED STATES**
Civ. No. 2162.

United States District Court
D. Connecticut.

Nov. 9, 1948.

Judgment Affirmed Nov. 3, 1949.

See 177 F.2d 627.

150

Dennis P. O'Connor, O'Connor & O'Connor, Hartford, Conn., for plaintiffs.

Adrian W. Maher, U. S. Atty., District of Connecticut, for defendant.

SMITH, District Judge.

This is an action for damages brought under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover for the burning of a potato warehouse and its contents, alleged to have been caused by the negligence of three potato-inspectors acting within the scope of their employment. The United States moves for summary judgment on the ground that the three inspectors were employes of a county agricultural association and not employes of the government within the meaning of the Tort Claims Act.

Defendant has submitted written statements concerning the hiring and payment of the inspectors, signed by the county assistant for the county association and by two of the inspectors.

Plaintiffs have placed in evidence on the motion U. S. Department of Agriculture Form ACP-71 Revised "Articles of Association of County Agricultural Conservation Association" under which the county association was formed, a copy of the La-

vitt Potato Co. application for a CCC loan on potatoes and receipt for preliminary service fee, and the U. S. Department of Agriculture Fruit and Vegetable Memorandum–11 "Instructions in Connection with 1946 Irish Potato Loans (Regular)".

There appears to be no dispute over the facts as stated by the inspectors and in the exhibits. The issue is their interpretation as constituting the inspectors employes of the United States or not.

The Tort Claims Act, in Section 2671 of Title 28, defines "employee of the government" as including officers or employes of any federal agency and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. The inspectors appear to have been acting indirectly on behalf of a federal agency (the Department of Agriculture) since the agricultural association is set up solely in order to carry out the federal laws relating to aid to agriculture. They appear to have been in the service of the association, however, rather than in the service of the United States. The United States, as lender, required prospective borrowers to organize themselves in associations for the purpose of policing the lending program under Title 7 U.S.C.A. § 610(b) and required that the compensation of employes of these associations of borrowers should be paid from the proceeds of the loans made to the borrowers under Title 16 U.S. C.A. § 590k. In these circumstances it cannot be said that the inspectors are in the service of the United States for, directly at least, they serve the associations of borrowers in carrying out functions that the lender requires the associations to perform as a prerequisite to the loans. Of course the money which pays the salaries of the inspectors comes from the lender. It comes, however, in form at least from the United States only as a fiscal agent paying it out on behalf of the borrower from the money made available to the borrower by the United States. If we were sure that, in all cases of these loans, there would be losses suffered by the United States, we might consider this machinery

a mere fiction since the payment eventually would be by the United States in spite of the bookkeeping entries. However, the loan programs are always open to the possibility that short supply and rising prices during the loan may make redemption profitable, in which case the re-payment would include the sums advanced by the government for the expenses of the agricultural associations.

Regardless of the merits of such a system of having inspections, for the protection of the government in the soundness of its loans, performed by inspectors hired with money borrowed from the government by an association of prospective borrowers set up under rules and regulations prescribed by a government agency, it is the system which has been adopted here. The system of county associations has been treated by the courts as a permissible and not unconstitutional exercise of the powers granted the Secretary of Agriculture. See Hawthorne et al. v. Fisher et al., D.C.N.D.Texas 1940, 33 F.Supp. 891, 895; Mulford v. Smith, 1939, 307 U.S. 38, 44–46, 59 S.Ct. 648, 83 L.Ed. 1092.

Since the inspectors were not in the service of the United States they were not employes of the United States within the meaning of the Tort Claims Act and no suit may be maintained against the United States for damages caused by their negligence in the absence of some other statutory permission to sue.

Summary judgment may be entered on behalf of the defendant, dismissing the complaint.